The relator concedes that the assessments which he seeks to reduce, were made precisely according to the statute, that is at the rate of $100 for every seven dollars of rents reserved in the leases. But he claims that this assessment is unjust for the reason that other property in the towns where he is assessed is assessed only at from one-third to one-fourth of its value, and consequently he is made to bear more than his just proportion of taxes.
This injustice results not from any erroneous assessment of the relator's property, but from the violation of their duty by the assessors in undervaluing the property of others, and the question presented is whether any power is conferred by law *Page 383 
upon the board of supervisors of the county to reduce the valuation of his property below that prescribed by law, so as to make it conform to the erroneous undervaluation by the assessors of the property of other tax-payers.
The power to make such reduction is claimed by the relator to be conferred by the first section of chapter 357 of the Laws of 1858, which authorizes the board of supervisors of the county to make certain corrections in assessments against non-residents, and especially by the last clause of the section which is in the following words: "And such board of supervisors may reduce the amount of such assessments in the respective towns or wards of the county in proportion or otherwise, as the nature of the corrections require, to make such assessments just."
The relator construes this clause as conferring upon the board of supervisors an absolute and unqualified discretionary power, to make any reduction which shall make the assessment just, in an abstract sense, even in disregard of the rule established by law for ascertaining the amount of the assessment.
It does not seem to us that any such unqualified power is conferred by the clause, but on the contrary that the power to make reductions is expressly qualified by confining it to such reductions as the nature of the corrections require, to make the assessment just, and that the corrections here referred to, are those which by the clause immediately preceding the board of supervisors are empowered to make.
The only power of correction conferred upon the board of supervisors by the preceding part of the section is as follows: "Whenever assessments are made against any person in any town or ward in which he does not reside, the board of supervisors of the county to which such assessments are returned, shall have in all respects as full power and authority, and it shall be their duty, to correct such assessments as to the valuation of the rents, and as to the gross amount for which such person shall be assessed, as the assessors have as to a resident of the town." *Page 384 
This provision confers upon the board of supervisors the same power of correction in the case of a non-resident tax-payer which the assessors have in the case of a resident of the town, but clearly no other or greater power. The act of 1846 (chap. 327), under which the assessment in question was made, prescribes in definite terms the rule for assessing these rents, viz., they are to be assessed "at a principal sum the interest of which, at the legal rate per annum, shall produce a sum equal to such annual rents, and in case such rents are payable in any other thing except money the value of such annual rents in money shall be ascertained by the assessors." It is evident that where, as in the present case, the rents are payable in money the only correction which could be made by the assessors would be to correct any error of computation which might have occurred in ascertaining the gross amount for which the owner of the rents should be assessed. The assessors could have no power to reduce the amount below that prescribed by the statute. When the rents are payable in any thing other than money, and are therefore subject to valuation, the valuation of the rents is liable to correction. Hence in the case of non-residents the board of supervisors are, by the act of 1858, vested with the same power to correct the assessments as to the valuation of the rents and as to the gross amount to be assessed, as the assessors have in the case of a resident of the town, and this is the limit of their power. By the concluding clause before referred to the board of supervisors are merely authorized to reduce the amount of the assessment so as to conform it to the corrections thus made. If the valuation of the rent is reduced, the amount of the assessment is to be reduced in proportion. If the computation of the principal sum is found to be erroneous, the amount of the assessment is to be reduced to the correct sum. This is what is intended by the power to reduce the assessments in proportion, or otherwise as the nature of the corrections require, and is we think the whole scope and effect of the act of 1858.
It can hardly be supposed that by the expression "to make *Page 385 
such assessment just" the legislature meant that they should be made other than conformable to law, or that they intended to substitute an unrestrained and undefined discretion of the board of supervisors in place of the definite rules established by the statute for the assessment of these rents, or that any thing more was intended than that the board should make the assessments correct and accurate according to the existing law. Very clear and explicit language would be required to lead us to the conclusion, that it was intended to confer upon the board power to value a rent payable in money at a less amount than the sum fixed by the lease, or to vary the rule of computation prescribed by the statute, or that it was contemplated by the act that the other real and personal property in the town should be assessed at less than its actual value, when the law positively requires that it shall be assessed at its just and full value. To make the valuation of one class of property depend upon the extent of the violation by assessors of the duty required of them by law in respect to another description of taxable property, would be a recognition and sanction of such violations of duty, which we should not impute to the legislature unless declared in the most unequivocal terms.
The order of the General Term should be reversed, and that of the Special Term affirmed with costs.
All concur; except ALLEN, J., dissenting; MILLER, J., not sitting.
Ordered accordingly.