course then available to him. For some unexplained reason, however, he did not see fit to invoke this means of defense.

Upon the record the plaintiff is entitled to judgment for $1,175.60, the amount claimed, and interest, with costs.

---

(16 Misc. Rep. 416, 419.)

### BROOKLYN EL. R. CO. v. CITY OF BROOKLYN.

### KINGS COUNTY EL. R. CO. v. SAME.

(Supreme Court, Special Term, Kings County. March 24, 1896.)

1. PUBLIC OFFICERS—DUTIES—ATTESTATION—IMPEACHMENT.
    Assessors who, as required by law, attest by affidavit the assessment roll, are estopped to contradict such attestation.

2. TAXATION—ASSESSMENT.
    The provision of the city charter of Brooklyn, requiring property to be designated on assessment rolls by lot and block number, does not apply to railroad tracks, telegraph lines, etc., in the street, but only to lots.

3. SAME—REDUCTION—JURISDICTION OF COURTS.
    A court has no authority to reduce taxes with consent of city officers.

4. SAME—REVIEW—JURISDICTION OF COURTS.
    Assessments for general taxation are not subject to review by the courts for excessiveness except under a writ of certiorari allowed by Laws 1880, c. 269, § 2.

5. SAME—ASSESSED VALUATION—REASONABLENESS.
    An assessment for taxation of the property of an elevated railroad company owning 20 miles of road bonded for $12,968,000, and stocked for $13,-283,000, with a net income of $843,970.28, at $2,903,965, on which the tax would be $80,000, is not excessive.

6. SAME.
    An assessment for taxation of the property of an elevated railroad company owning nine miles of road, bonded for $9,200,000, and stocked for $3,550,000, at $1,111,190, is not excessive.

Actions by the Brooklyn Elevated Railroad Company and the Kings County Elevated Railroad Company, respectively, against the city of Brooklyn, to enjoin a sale of their properties for delinquent taxes, consolidated. On motions to continue temporary injunction. Denied, and injunction vacated.

Hoadley, Lauterbach & Johnson, for plaintiffs.
A. G. McDonald, Corp. Counsel, for defendant.

GAYNOR, J. This railroad corporation brings this action to obtain an injunction to prevent the registrar of arrears of the city of Brooklyn from selling its structure for nonpayment of its taxes. The alleged grounds upon which it seeks to evade payment of its share of taxes for the support of government, and throw the same upon the other taxpayers, are without merit. It says that two assessors did not together examine its structure each year before valuing the same for taxation. It is enough to say in answer that each assessment roll is attested by the affidavit of two assessors, as required by law, that they did so examine all taxable property therein set down. The papers before me show the apparent willingness of at least two of the assessors to make doubtful, if not to contradict, this solemn attestation and oath by them of public duty done; but the law, for reasons of sound public policy, does not permit public

officers charged with the doing of duties in their nature judicial to impeach the good faith and verity of their acts.    Assessors act under the law upon a notice of hearing to all persons interested, and after hearing all who come before them.    Their attestation of the assessment rolls in the form and words prescribed by law is a judicial act of unquestionable verity.    Barhyte v. Shepherd, 35 N. Y. 238; Cooley, Tax'n, 260.    If they were allowed to impeach it by their testimony, no tax levy, however exactly and legally cast, would be safe.    But beyond this it is clear as a matter of fact that at least two of the assessors did together examine the plaintiff's property in each ward. It is also claimed that the taxes are void because the sections of structure of the plaintiff in each ward have not been designated upon the assessment roll by lot and block numbers.    The requirement of such designation in the charter of Brooklyn applies only to lots.    It was not intended to apply to railroad tracks, telegraph lines, and the like in the streets; and the obstacles in the way of so applying it are obvious.    It is also alleged that the valuation is excessive.    It would be enough to say that that is not, and never was, ground for maintaining an action like this.    The courts have no power to review assessments for general taxation for alleged inequality or excessiveness, except under a writ of certiorari as allowed by chapter 269 of the Laws of 1880, which statute is part and parcel of our process of taxation, and to be invoked at the time.    Canal Co. v. Atkins, 121 N. Y. 246, 24 N. E. 319; People v. Parker, 117 N. Y. 86, 22 N. E. 752. That act was passed only because prior to that time the courts had no power in the premises at all, except such as could be exercised strictly upon a return to a common-law writ of certiorari of the record of the assessors' proceedings.    People v. Smith, 24 Hun, 66; People v. Board of Sup'rs, 60 N. Y. 381.    Something is said in the papers before me of this company's taxes having been reduced several years ago by a judgment upon consent of certain city officials. There must be some inaccuracy or inadvertency about this, for this court has no power to reduce taxes upon consent of officials.    If the power to reduce taxes were possessed by officials, the way would be open to more political favoritism and greater official corruption than has yet been known.    But it seems timely to notice upon the actual figures and the merits the claim of this company that its structure is excessively valued for taxation, especially as it is urged that the assessors did not duly consider the earnings of the company in fixing such valuation.    The 20 miles of structure of the company is valued upon the assessment rolls at a total valuation of only $2,903,965, making a tax of about $80,000 each year.    And yet the company is bonded for $12,968,000, and stocked for $13,283,000, making a total of over $26,000,000.    If the company's structure is not worth the assessors' valuation of $2,903,965, what is to be said of this total of $26,000,000 in bonds and stock?    What was it issued for?    If this assessed value were doubled, and put at $6,000,000 (for illustration), or trebled, and put at $9,000,000, in order to get the actual value, the disparity between the actual value and the amount of bonds and stock would still be striking.    And due consideration, in this connection, of the earnings of the road, makes no better case for the company.

The papers before me show that during the time in question it has been carrying an average of upward of 95,000 passengers a day. This enables the gross receipts to be accurately stated. In fact, the company's report to the railroad commissioners in 1893 (the year in question) gives the gross receipts from operation as $1,935,683.84. If 55 per cent. be allowed for operating expenses, including repairs, the remainder will be net earnings. But the said report gives the net earnings as $843,970.28, which sum I take. This is a net income of over 28 per cent. on the value which the assessors have placed upon the company's structure (viz. $2,903,965, or, in round numbers, $3,000,000), or of over 14 per cent. on double that value (viz. $6,000,-000), or of over 9 per cent. on treble that value (viz. $9,000,000). There is no house, store, or factory property in Brooklyn favored like this in taxation. To say that this company cannot pay its taxes out of its net income, because it is all consumed in paying interest upon its said excessive issue of bonds, is not a permissible answer. If it was, it has only to continue to issue more bonds, and never pay any taxes. These bonds are not upon the actual property of the company alone, which it says the assessors have excessively valued at less than $3,000,000, but also upon the valuable franchises which have been given to it by government. For the company to issue bonds on such franchises, gift of the government to it, and then say to government that it cannot or shall not pay any taxes upon its actual taxable property, out of its income upon actual investment, because it first has to pay interest upon such bonds, is a position which cannot be justified either in law or in morals. The excessive issuing of bonds and stock by corporations enjoying public franchises, naturally leads to the unjust cutting down by them of all natural and just expenses, as well as the refusal to pay just taxes, in order that interest and dividends may be paid upon such excessive obligations. The first duty of this company is to government, which gave it life and endowed it with valuable privileges and franchises. If all taxpayers should follow the example of this company, and refuse to pay their taxes, government would be brought to a downfall. I find no truth or merit whatever in the assertion of the company that its property is overvalued. That it has overbonded and overstocked itself, thereby to create inflated values or unearned fortunes, is no reason why its obligation to pay its just share of taxes upon its actual property should be made second to its obligation to pay interest upon such bonds or dividends upon such stock. It is no reason why its share towards the support of government should be thrown upon the other taxpayers.

The motion to continue the temporary injunction is denied, and the said injunction is vacated.

In the similar case of the Kings County Elevated Railroad Company against the city of Brooklyn Mr. Justice GAYNOR at the same time filed the following opinion:

GAYNOR, J. The opinion filed herewith in the similar case of the Brooklyn Elevated Railroad Company is applicable to this com-

pany's case. I have examined into its financial condition with care, as I did also into that of the other company. It is pertinent to add that this company is assailing as excessive an assessed valuation of its nine miles of road at a total of only $1,111,190 for taxation, although it has issued $9,200,000 of bonds and $3,550,000 of stock, making a total of $12,750,000. Its bonds alone average over $1,000,000 a mile, while the total assessed value of its whole line is only about $1,000,000. The company seems to labor under the false notion that its obligation to pay interest upon this grossly excessive issue of bonds is superior to its obligation to pay its just share towards the support of government, which gave it life and protects it, and that it is therefore permissible for it to refuse to pay, and try to shoulder that share off upon the other taxpayers. Government which permitted the like could not, in the nature of things, long endure.

The motion to continue the temporary injunction is denied, and the said injunction is vacated.