THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL AUBIN NASH and Another, Individually and as Executors, etc., of SAMUEL Y. NASH, Deceased, Relators, *v.* MICHAEL F. LOUGHMAN and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 10, 1927.

Taxation — transfer tax on property owned by non-resident decedent — two per cent tax was imposed on real estate in this State under Tax Law, art. 10-A — contention by executors that they are being deprived of property without due process of law is abstract constitutional question in this case and not passed on — Tax Law, art. 10-A, does not violate Federal Constitution, art. 4, § 2, par. 1, and Fourteenth Amendment, § 1, relating to privileges and immunities of citizens of several States.

This is a proceeding to review the action of the State Tax Commission in fixing a transfer tax, under article 10-A of the Tax Law (as added by Laws of 1925, chap. 143), on certain real property in this State constituting a portion of the estate of a non-resident decedent, at two per cent of the clear market value of the property. The contention by the executors that they are being deprived of their property without due process of law in violation of section 1 of the Fourteenth Amendment of the Federal Constitution because there is provided no method of review of the assessment by the courts is not determined. The question presented is an abstract constitutional question in this case, since the executors do not claim to have been aggrieved by the method adopted in

assessing the tax under the terms of the statute and there is nothing to correct on review. Accordingly they have not been deprived of property without due process of law.

The statute in question does not violate paragraph 1 of section 2 of article 4 and section 1 of the Fourteenth Amendment of the Federal Constitution on the ground that the executors have been denied the privileges and immunities accorded to citizens of this State by the imposition of a discriminatory rate of tax.

CERTIORARI ORDER granted out of the Supreme Court on the 19th day of February, 1927, directed to Michael F. Loughman and others, constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in fixing a transfer tax on certain real property in this State, constituting a portion of the estate of a non-resident decedent.

*Pattison & Pattison* [*Edward H. Pattison* and *Joseph F. McCloy* of counsel], for the relators.

*Albert Ottinger,* Attorney-General [*Henry S. Manley,* Deputy Attorney-General, of counsel], for the respondents.

DAVIS, J. Samuel Y. Nash, a resident of the State of Massachusetts, died January 17, 1926. Prior to his death he was the owner of a brick building in the city of Troy, valued at $75,000. The relators, Samuel Aubin Nash and Julia Nash Howard, are his only children. By the will of the testator they were appointed executors, and with the exception of one small specific bequest they were the sole devisees and legatees.

In proceedings duly instituted before the Tax Commission, a tax of two per cent was imposed on the real estate, amounting to $1,451.84. The tax was paid under protest and this proceeding was brought. The tax was levied under the provisions of article 10-A (§§ 248–248-p) of the Tax Law, constituting a part of chapter 143 of the Laws of 1925. This article regulates taxable transfers on the property of non-resident decedents. The validity of the statute is challenged here on the ground that it is violative of paragraph 1, section 2, article 4, and section 1 of the Fourteenth Amendment of the Federal Constitution.

The first paragraph of section 2, article 4, states merely the abstract principle — "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." Section 1 of the Fourteenth Amendment makes more definite and vital the principle just stated. (*Slaughter-House Cases,* 16 Wall. 36; *Maxwell v. Bugbee,* 250 U. S. 525.) It defines citizens of the United States and of the several States, and provides that " No State shall make or enforce any law which shall abridge the privileges or mmunities of citizens of the United States; nor shall any State

deprive any person of life, liberty, or property, without due process of law."

It is the contention of relators that under this statute (1) they are being deprived of property without due process of law, because there is provided no method of review of the assessment by the courts; and (2) they are denied the privileges and immunities accorded to citizens of this State by the imposition of a discriminatory rate of tax.

The claim of the denial of due process is, of course, limited. Their right to be here through process furnished by our practice (Civ. Prac. Act, § 1284, subd. 2) is not questioned. The question of the fundamental legality of the tax has been argued and will be decided. It is true that in the statute there is no provision for a review of the determination by the Commission, although full review by certiorari is provided by article 267 of the regulations adopted by the Commission. It is well understood that where property rights and transfers are assessed for the purpose of imposing a tax, it has been the general policy of the Legislature to provide a review by the courts to obviate error, illegality, inequality and consequent injustice. (Tax Law, §§ 199, 219, 232, 290, 375.) The omission of a similar provision relative to the assessment of transfers of property of non-resident decedents was perhaps due to inadvertence, and very likely will be corrected if it appears to be necessary to promote justice.

Generally speaking, there is no jurisdiction in the courts in the absence of statute to review the legislative, executive or administrative acts of a tax official or board involving the exercise of discretion. Without statutory authority to review, courts will not undertake to correct errors, inequalities and inequities arising in the administration of such laws. (*People ex rel. Youmans* v. *Supervisors,* 60 N. Y. 381; *Matter of Long Island R. R. Co.* v. *Hylan,* 240 id. 199.) It is only when the taxing body transcends its delegated powers and acts illegally, or where the exercise of power is judicial or quasi judicial, that the courts will assume jurisdiction. (*National Bank of Chemung* v. *City of Elmira,* 53 N. Y. 49; *Matter of Long Island R. R. Co.* v. *Hylan, supra.*) Then by action or by certiorari (Civ. Prac. Act, § 1284, subd. 2) relief may be afforded.

There are no express words in the statute making the determination of the Commission final. The Commission in its regulations invites review. Under these circumstances no doubt certiorari will furnish a remedy to a party aggrieved by the quasi judicial act of officials resulting in injustice. (*People ex rel. Dawley* v. *Wilson,* 232 N. Y. 12.) Furthermore, the relators do not claim to have been aggrieved by the method adopted in assessing the tax

under the terms of the statute. The tax was determined in a proceeding instituted by them and in which they had opportunity to be heard. (Tax Law, § 248-o.) There is nothing to correct on review, so they have not been deprived of property without due process. In this respect the relators are not aggrieved parties, and we will not undertake to determine an abstract constitutional question. (*People* v. *Sanger,* 222 N. Y. 192; *Hatch* v. *Reardon,* 204 U. S. 152.)

The claim that the statute is discriminatory between residents and non-residents, denying to the latter the privileges and immunities extended to citizens of this State, presents a difficult question which must be here determined. Without referring to particular sections of the Tax Law, it is well known that in taxing transfers of the property of resident decedents, there are many deductions and exemptions allowed, and there are gradations of the amount of the tax, dependent both upon the amount of the estate and the relationship between the decedent and the person taking the property. There are no similar provisions relative to the property of non-resident decedents passing in the same manner. The tax is imposed at the flat rate of three per cent upon the clear market value of the property or interest transferred, less deductions therefrom proportionately for debts, funeral and administrative expenses; or at the rate of two per cent if such deductions are waived. (Tax Law, §§ 248-a, 248-b.)

It clearly appears that this estate pays a higher tax than would a similar estate of a resident decedent passing to his children. On the face of this particular case the law would appear arbitrary, discriminatory and violative of the privileges and immunities of these non-resident parties. It may be admitted that taxing statutes enjoy no immunity from the operation of constitutional inhibitions. There must be justification of apparent restrictions against non-residents on rights left free to citizens here. (*Ward* v. *Maryland,* 12 Wall. 418, 430; *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60.) There are statutes which seem to have the obvious purpose of discrimination. Some are readily determined to be invalid because they abridge and impair the rights and privileges of a class. (*Chalker* v. *Birmingham & N. W. R. Co.,* 249 U. S. 522.) Others are held to be valid. (*People* v. *Crane,* 214 N. Y. 154, 161, and cases cited; affd., *sub nom. Crane* v. *New York,* 239 U. S. 195.) There is no fixed standard to be applied indiscriminately. (*Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237.) The constitutionality of a statute cannot be determined solely on the language used in expressing the legislative policy. The fundamental purpose must be considered and the effect produced by its practical operation. (*General*

*American Tank Car Corp.* v. *Day,* 270 U. S. 367, 373; *Mountain Timber Co.* v. *Washington,* 243 id. 219, 237.) The history and the circumstances of its origin are often of value, as well as the subsequent demonstration of results in working under it. Nor may we be safely guided in our decision by considering the effect on an isolated case. There must be substantial discrimination of general effect if the attack is justified. (*Maxwell* v. *Bugbee, supra,* 543.)

It appears that this statute was no thoughtless or haphazard act of the Legislature, but rather was the result of deliberate study, having for its purpose the simplification of procedure and the eventual exemption from taxation of certain property of non-resident decedents. Its origin was in the difficulties encountered not only in this State but elsewhere in devising a method of assessing and collecting taxes without the delay, annoyance, trouble and expense the methods theretofore adopted had engendered. Before the enactment of this statute the same rates and rules were applied to the estates of residents and non-residents. For years the taxing officers of this State, as is shown by public documents, complained of the expense and delay in the collection of such taxes. There was similar trouble in other States. Likewise, as is commonly known, there was much agitation amongst those administering the estates of decedents, not only because of the burden of the tax imposed by different jurisdictions but also because of the delay and hardship in conducting the assessment proceedings and in the production of proof at places remote from its source, as to the amount and value of other property, the debts and administrative expenses, and the relationship of the beneficiaries. It became a matter of grave public concern and was discussed by official and semi-official bodies representing different States, gathered to consider the problems with which they had to contend. Out of this welter of complaint and discussion there emerged what is known as the " Matthews plan." This, it is said, was devised by Assistant Attorney-General Matthews of New Hampshire. He advocated its general adoption at a meeting of the National Tax Association, after it had been enacted by the Legislature of his own State in 1921. This plan attempted to solve the difficulties above enumerated and simplify the procedure by imposing a flat rate of two per cent. The plan has been adopted by Virginia, Connecticut, Kentucky and California. There are, of course, no deductions, exemptions or gradations.

In this State the statute presents a variation from the " Matthews plan," permitting proportionate deductions for debts, administrative and funeral expenses — the proportions being based upon the relative amount of property in this State and in other States. This was a wise and equitable provision whereby if the debts approxi-

mated the total amount of the property, a tax would not be exacted here.

It is not claimed that the rates imposed are excessive, and we have seen that the statute deals justly with those estates burdened with debts. The mere application of different rates to different classifications is not necessarily discrimination. (*Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283.) In applying the further test as to unreasonable or arbitrary discrimination between the tax on property of resident and non-resident decedents, we must be guided by the general scope and purpose of the act in its practical administration rather than by prophetic fears or its effect in particular cases. As heretofore stated, the plan has been adopted in other jurisdictions. We are, to a large extent, uninformed concerning practical results there. So far as we are advised also, the constitutionality of similar statutes has not been determined by the courts of those jurisdictions. Evidently there, as here, a practical test is being made of the availability of this method, both in the interest of the State and those called upon to administer estates. That there has been no clamor of attack is perhaps some evidence that where tried, satisfactory results have followed.

In this State the practical results are thus far favorable. The official reports are to the effect that during the year 1920 the average rate of tax on the estates of non-residents was two and forty-seven one-hundredths per cent. The Tax Law in effect then applied both to the estates of residents and non-residents. The two per cent rate now in operation does not by comparison appear to be arbitrary and unjust in its general effect. It is not disputed that assessment and collection have been more speedy and simple and the burden of expense lightened for both parties. This proceeding before the Commission well illustrates the simplicity sought for and evidently obtained. The relators under the provisions of the Decedent Estate Law (§ 44, as amd.) filed and recorded in the office of the surrogate of Rensselaer county, where the real property was situated, an exemplified copy of the will, properly authenticated as to its probate in Massachusetts. Then one of the executors presented, evidently on the form provided by the Commission, an affidavit briefly setting forth the facts as to the decedent and his property, giving a schedule thereof. This was accompanied by the affidavits of two persons familiar with values of real estate in Troy, who gave their opinion of the fair market value of the building. The Tax Commission then proceeded to assess the tax in question at the basis of two per cent of its net value, as stated. Only ten days elapsed between the filing of the petition or return with the Commission and the payment of the tax, and the owners were then free to con-

vey the property. Simplicity, with the avoidance of delay and expense, must have a value. In promoting permissible governmental action it seems to furnish a practical reason for a classification between residents and non-residents. At least it appears justified on this record. This estate was exempted from taxation on intangible personal property, as others similarly situated may be. (Tax Law, § 248-p.) There is no iron rule requiring absolute equality and uniformity in placing tax burdens. The test must be applied to the general plan in appraising the reasonableness of apparent discrimination. (*Travellers' Ins. Co.* v. *Connecticut*, 185 U. S. 364; *General American Tank Car Corp.* v. *Day, supra; Dane* v. *Jackson*, 256 U. S. 589.) A classification for purposes of taxation must rest on some reasonable distinction. (*Schlesinger* v. *Wisconsin*, 270 U. S. 230, 240.) We think procedural conveniences, as above stated, in view of results obtained may furnish a reasonable basis for the classification of non-residents and residents in matters of this nature.

When such benefits result as have been stated, and the general effect has given an average rate not exceeding that imposed under former statutes, we should be reluctant to declare this remedial statute void. (*Sunday Lake Iron Co.* v. *Wakefield*, 247 U. S. 350.) Its practical operation thus far gives no basis for the claim that the statute represents an intent to impose such unfair and unreasonable discrimination against non-residents that their privileges and immunities as citizens of the United States have been abridged.

The determination should be confirmed, with fifty dollars costs.

VAN KIRK, Acting P. J., HINMAN, McCANN and WHITMYER, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.