MAXWELL ET AL., EXECUTORS OF McDONALD, v. BUGBEE, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, ET AL.

HILL, ADMINISTRATOR OF HILL, v. BUGBEE, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, ET AL.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

Nos. 43, 238. Argued March 18, 19, 1919.—Decided October 27, 1919.

Article IV, § 2, par. 1, of the Constitution, was intended to prevent discrimination by the several States against citizens of other States in respect of the fundamental privileges of citizenship. P. 537.

The Fourteenth Amendment recognizes a distinction between citizenship of the United States and citizenship of one of the States, and its purpose in declaring that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States is not to transfer to the Federal Government the protection of civil rights inherent in state citizenship but to secure those privileges and immunities that owe their existence to the Federal Government, its national character, its Constitution, or its laws. P. 537. *Slaughter-House Cases*, 16 Wall. 36.

These privileges and immunities provisions do not prevent a State from taxing the privilege of succeeding by will or inheritance from a non-resident decedent to property within its jurisdiction. P. 538.

*Quære:* Whether these privileges and immunities clauses are applicable when the alleged discrimination (in a state inheritance tax law) is based not on citizenship but on the residence or non-residence of the decedent? *Id.*

The fact that a state tax on the succession to local property of a non-resident decedent is measured by the ratio in value of such property to the entire estate, including real and personal property in other States, does not make it a tax on the property beyond the jurisdiction and thus obnoxious to the due process clause of the Fourteenth Amendment. P. 539.

The difference between the relations to the State of resident and non-resident testators or intestates affords justification within the equal protection provision of the Fourteenth Amendment for measuring succession taxes in different ways. P. 540.

The question of equal protection must be decided between resident and non-resident decedents as classes, rather than by the incidence of the tax in particular cases. P. 543.

The New Jersey inheritance tax, as to estates of resident decedents, is measured on all the property passing testate or intestate under the law of the State (foreign realty excluded), with various exemptions and graduations based on relationship of beneficiaries and amounts received; as to estates of non-residents, the tax on the transfer to the personal representative, respecting only local real and tangible personal property, stock of New Jersey corporations and of national banks located in the State, bears the same ratio to the entire tax which would be imposed under the act if the decedent had been a resident and all his property real and personal had been located within the State, as such property within the State bears to the entire estate wherever situate, specific devises or bequests of property within the State being excluded from this computation. Owing to

the graduation and exemption features, this plan of apportionment, in cases of certain large estates of non-residents, embracing large real estate and other assets in other States, resulted in greater taxes for the transfer of their property in New Jersey than would have been assessed for transfer of an equal amount of property of a decedent dying resident in the State. *Held*, that such taxes did not infringe the privileges and immunities provision of Article IV of the Constitution; or the like provision, or the equal protection or due process clauses, of the Fourteenth Amendment.

90 N. J. L. 707; 92 *id.* 514, affirmed.

THE cases are stated in the opinion.

*Mr. Lawrence Maxwell* and *Mr. E. C. Lindley,* with whom *Mr. William A. Smith* was on the brief, for plaintiffs in error.

The plan of the last paragraph of § 12 of the taxing act, which provides a method of assessing the tax on the transmission of non-resident estates, is designed to assess a larger tax against such transmission than is provided by § 1 for the transmission of property of resident decedents. If this be denied, then, in the case of non-residents, the act is designed to assess a tax on the transmission of property situated without the State of New Jersey and over which the State of New Jersey has no jurisdiction for the purposes of taxation, and which is not transmitted through the aid and assistance of any law of the State of New Jersey.

By the imposition of the tax in question the Constitution of the United States is violated as follows:

(a) By the inclusion of real estate situate without the State of New Jersey in the computation of the tax on the transfer of a non-resident's estate, and the exclusion thereof in the computation of the tax on the transfer of a resident's estate.

(b) By assessing on the entire estate of a non-resident a tax figured at the graduated rates and then apportioning

the tax according to the proportion of property situated in New Jersey, the transfer of which is subject to a tax, to the entire estate of decedent, instead of first apportioning among those taking (and before figuring a tax on their shares) the New Jersey property subject to a transfer tax and then assessing the tax thereon.

(c) By deducting from the entire share of the non-resident decedent passing to the beneficiary the exemption of each beneficiary in the non-resident's estate, instead of making the deduction from each beneficiary's share in the New Jersey assets. By the deduction of the amount of exemption from his entire share, each beneficiary receives only a proportion of the exemption.

The method of assessment provided for violates the Federal Constitution for the following reasons:

(a) It taxes non-residents more than it does residents and therefore gives to residents privileges and immunities denied to non-residents. *Paul* v. *Virginia*, 8 Wall. 168; *Ward* v. *Maryland*, 12 Wall. 418; *Blake* v. *McClung*, 172 U. S. 239; *Corfield* v. *Coryell*, 6 Fed. Cas. 546; *Magill* v. *Brown*, 16 Fed. Cas. 408, 428; *State* v. *Julow*, 129 Missouri, 163; *State* v. *Betts*, 24 N. J. L. 555, 557; *Louisville & Nashville R. R. Co.* v. *Gaines*, 3 Fed. Rep. 266, 278; *Tatem* v. *Wright*, 23 N. J. L. 429; *Estate of Johnson*, 139 California, 532; *Estate of Mahoney*, 133 California, 180; *Estate of Leland Stanford*, 126 California, 112.

(b) It taxes the transfer of a non-resident's property over which the State of New Jersey has no jurisdiction while it expressly omits like property of residents, that is, non-resident real estate, and thereby deprives the non-resident of his property without due process of law. *International Paper Co.* v. *Massachusetts*, 246 U. S. 135; *Looney* v. *Crane Co.*, 245 U. S. 178; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1; *Louisville Ferry Co.* v. *Kentucky*, 188 U. S. 385; *Beers* v. *Edwards*, 84 N. J. L. 32; *Carr* v. *Edwards*, 84 N. J. L. 667.

(c) It provides for a tax which bears unequally and therefore is not imposed upon a uniform rule and it therefore denies to non-residents the equal protection of the laws. *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283; *Gulf &c. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *State* v. *Julow*, 129 Missouri, 163; *In re Van Horne*, 74 N. J. Eq. 600; *Meehan* v. *Board of Excise*, 73 N. J. L. 382; *Middleton* v. *Middleton*, 54 N. J. Eq. 692.

The objections that the act taxes property beyond the State and is laid unequally undoubtedly may avail the executors and beneficiaries on their own behalf as well as on behalf of their decedents; but, independently, the Constitution protects the right to transmit property on death against discrimination between resident and non-resident decedents. The cases cited in the court below to the effect that taxes of this kind are on the right to succeed and not on the right to transmit did not turn on that contention but on distinguishing between a property and a transfer tax. Many cases might be cited which refer to the right to transmit as well as to the right to succeed. See *Howell* v. *Edwards*, 88 N. J. L. 134, quoting *Neilson* v. *Russell*, 76 N. J. L. 27; *Attorney General* v. *Stone*, 209 Massachusetts, 186; *United States* v. *Perkins*, 163 U. S. 625, 628; *Paul* v. *Virginia, supra*, 180; *Brennan* v. *United Hatters*, 73 N. J. L. 729, 742.

The right to transmit property on death is a property right, and this right affects the value of the property to the deceased in his lifetime. If the legislature might discriminate between resident and non-resident decedents and limit the non-resident in his right to dispose of property within the State on his death, or appropriate part or all, surely the property would not be worth as much to him as it would be worth to a resident.

If the State's contention is well founded, then there is no federal constitutional provision insuring equality as

between resident and non-resident decedents, who are citizens of States of the United States, other than the State of New Jersey, in the right of equal application of the laws of descent and transmission of property on death. This court may well hesitate before confirming to the legislature any such arbitrary power.

This provision is nearly as important in keeping the Union together as is the commerce clause of the Federal Constitution. The denial of its protection would permit the state legislature to provide by law for appropriation, on death, of the property of a non-resident citizen within the State's jurisdiction, and to provide otherwise as to its own residents.

The court will keep in mind the distinction between the idea of the sovereignty of the State, under the Roman law and that under the English law determined from the Bill of Rights. Surely that which may be granted to aliens by treaty (*Mager* v. *Grima*, 8 How. 490; *Succession of Rixner*, 48 La. Ann. 552), may not be denied to citizens. But the right has not been claimed by any States other than California, and when claimed in that State has not been sustained. See *Estate of Johnson*, 239 California, 532.

*Mr. John R. Hardin* for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

These cases were argued and submitted together, involve the same constitutional questions, and may be disposed of in a single opinion. The attack is upon the inheritance tax law of the State of New Jersey, and is based upon certain provisions of the Federal Constitution. The statute has reference to the method of imposing inheritance taxes under the laws of the State. The constitutionality of the law upon both state and federal grounds was upheld in the McDonald case by the Court of Errors and

Appeals, 90 N. J. L. 707. In the Hill case the judgment of the Supreme Court of New Jersey (91 N. J. L. 454) was affirmed by the Court of Errors and Appeals, 92 N. J. L. 514.

The statute under consideration is an act approved April 9, 1914 (P. L. 1914, p. 267), being an amendment to an act approved April 20, 1909 (P. L. 1909, p. 325), for taxing the transfer of property of resident and non-resident decedents by devise, bequest, descent, etc., in certain cases. The 1909 act is found in 4 Comp. Stats. N. J., p. 5301, *et seq.*; the amendment in 1 Supp. Comp. Stats. N. J.; pp. 1538–1542. The act of 1909, in its first section, imposed a tax upon the transfer of any property, real and personal, of the value of $500 or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, including the following cases:

"*First.* When the transfer is by will or by the intestate laws of this State from any person dying seized or possessed of the property while a resident of the State.

"*Second.* When the transfer is by will or intestate law, of property within the State, and the decedent was a non-resident of the State at the time of his death."

The taxes thus imposed were at the rate of 5 per cent. upon the clear market value of the property, with exemptions not necessary to be specified, and were payable to the treasurer for the use of the State of New Jersey.

And by § 12 it was provided that upon the transfer of property in that State of a non-resident decedent, if all or any part of the estate, wherever situated, passed to persons or corporations who would have been taxable under the act if the decedent had been a resident of the State, such property located within the State was made subject to a tax bearing the same ratio to the entire tax which the estate of such decedent would have been subject to under the act if the non-resident decedent had been a resident of the State, as the property located in the State bore to the

entire estate of such non-resident decedent wherever situated.

The act, having first been amended by an act approved March 26, 1914 (P. L. 1914, p. 91), not necessary to be recited, was again amended by the act approved April 9, 1914, which is now under consideration (P. L. 1914, p. 267; 1 Supp. Comp. Stats. N. J., pp. 1538–1542). Sections 1 and 12 were amended, the former by confining the tax on the transfer of property within the State of non-resident decedents to real estate, tangible personal property, and shares of stock of New Jersey corporations and of national banks located within the State; and by modifying the former rate of 5 per centum upon the clear market value of the property passing, which was subject to exemptions in favor of churches and other charitable institutions, and of parents, children, and other lineal descendants, etc., by making 5 per centum the applicable rate but subject to numerous exceptions, and in the excepted cases imposing different rates, dependent upon the relationship of the beneficiary to the deceased and the amount of the property transferred. Thus, "Property transferred to any child or children, husband or wife, of a decedent, or to the issue of any child or children of a decedent, shall be taxed at the rate of one per centum on any amount in excess of five thousand dollars, up to fifty thousand dollars; one and one-half per centum on any amount in excess *to* [of] fifty thousand dollars, up to one hundred and fifty thousand dollars; two per centum on any amount in excess of one hundred and fifty thousand dollars, up to two hundred and fifty thousand dollars; and three per centum on any amount in excess of two hundred and fifty thousand dollars."

The modified formula for computing the assessment upon the transfer of the estate of a non-resident decedent, prescribed in § 12 as amended by the act under consideration, is as follows:

"A tax shall be assessed on the transfer of property made

subject to tax as aforesaid, in this State of a nonresident decedent if all or any part of the estate of such decedent, wherever situated, shall pass to persons or corporations taxable under this act, which tax shall bear the same ratio to the entire tax which the said estate would have been subject to under this act if such nonresident decedent had been a resident of this State, and all his property, real and personal, had been located within this State, as such taxable property within this State bears to the entire estate, wherever situated; *provided,* that nothing in this clause contained shall apply to a specific bequest or devise of any property in this State."

An amendatory act, approved April 23, 1915 (P. L. 1915, p. 745; 1 Supp. Comp. Stats. N. J., p. 1542), repeated the provision last quoted, and made no change in the act pertinent to the questions here presented.

It is this method of assessment in the case of non-resident decedents which is the subject-matter in controversy.

James McDonald died January 13, 1915, owning stock in the Standard Oil Company, a New Jersey corporation, valued at $1,114,965, leaving an entire estate of $3,969,333.25, which included some real estate in the State of Idaho. Of the entire estate, $270,813.17 went to pay debts and expenses of administration. Mr. McDonald was a citizen of the United States and a resident of the District of Columbia, and left a will and a codicil which were admitted to probate by the Supreme Court of that District. The executors are Lawrence Maxwell, a citizen of Ohio, and the Fulton Trust Company, a New York corporation. The principal beneficiaries under the will are citizens and residents of States of the United States other than the State of New Jersey. Under the will the wife takes by specific legacies; the other beneficiaries are specific and general legatees not related to the deceased and a son and two grandchildren, who take the residuary estate.

James J. Hill died May 29, 1916, intestate, a resident

and citizen of the State of Minnesota, leaving a widow and nine children. Under the laws of Minnesota, the widow inherited one-third of the real estate and personal property, and each of the children two-twenty-sevenths thereof. The entire estate descending amounted to $53,814,762, which included real estate located outside of New Jersey, and principally in Minnesota and New York, valued at $1,885,120. The only property the transfer of which was subject to taxation in New Jersey was stock in the Northern Securities Company, a New Jersey corporation, valued at $2,317,564.68. The debts and administration expenses amounted to $757,571.20.

The amount of the assessment in the McDonald case was $29,071.68. In the Hill case the tax assessed amounted to $67,018.43. Following the statute, the tax was first ascertained on the entire estate as if it were the estate of a resident of the State of New Jersey, with all the decedent's property both real and personal located there; the tax was then apportioned and assessed in the proportion that the taxable New Jersey estate bore to the entire estate.

The thing complained of is, that applying the apportionment formula fixed by the statute, in the cases under review, results in a greater tax on the transfer of property of the estates subject to the jurisdiction of New Jersey than would be assessed for the transfer of an equal amount, in a similar manner, of property of a decedent who died a resident of New Jersey. The cause of this inequality is said to arise because of imposing the graduated tax, provided by the statute, upon estates so large as these. If a resident, in the case of a wife or children, the first $5,000 of property is exempt, the next $45,000 is taxed at the rate of 1%, the next $100,000 at the rate of 1½%, the next $100,000 at the rate of 2%, and the remainder at the rate of 3%. The contention is, that applying the apportionment rule provided in the case of non-resident estates, a larger amount of tax is assessed.

The correctness of the figures deduced from the application of the statute as made by the counsel for plaintiffs in error is contested, but in our view the differences are unimportant unless the State is bound to apply the same rule to the transmission of both classes of estates.

Counsel for plaintiffs in error sum up their objections to the statute, based on the Federal Constitution, as follows:

(1) It taxes the estates of non-residents more than those of residents and therefore gives to residents privileges and immunities denied to non-residents.

(2) It provides for a tax which bears unequally and therefore is not imposed upon a uniform rule and it therefore denies to non-residents the equal protection of the laws.

(3) It taxes the transfer of a non-resident's property over which the State of New Jersey has no jurisdiction while it expressly omits like property of residents, that is, real estate without the State, and thereby deprives the non-resident of his property without due process of law.

Before taking up these objections it is necessary to briefly consider the nature of the tax. In *Carr* v. *Edwards*, 84 N. J. L. 667, it was held by the New Jersey Court of Errors and Appeals to be a tax upon the special right, the creation of the statute, of an executor or administrator of a non-resident decedent to succeed to property having its situs in New Jersey. Of § 12, as it stood in the original act of 1909, the court said: "That section contains nothing to indicate that it is not the succession of the New Jersey representative that is meant to be taxed. It is true that the tax is not necessarily five per cent. upon the whole New Jersey succession. The amount depends on the ratio of the New Jersey property to the entire estate wherever situated. This, however, merely affords a measure of the tax imposed; the tax is still by the very words of the section imposed upon the property located within this state. The reason for adopting this provision was to make sure that the rate of taxation in case of non-resident decedents

should equal but not exceed the rate imposed in the case of resident decedents.   .  .  .

"In the case of the estates of non-resident decedents, it is open for the law of the domicile to provide, as testators sometimes do, that such taxes shall be a general charge against the estate. Our legislature must be assumed to have had in mind its lack of jurisdiction over legacies under a non-resident's will, and in order to protect the New Jersey executor, administrator or trustee who paid the tax, authorized its deduction from 'property for distribution.' This phrase suffices to reach not only a distributive share of a resident's estate in case of intestacy, but the whole of the New Jersey property of a non-resident when turned over to the executor or administrator at the domicile of the decedent. The provision for both cases—legacies and property for distribution—demonstrates that the legislature did not mean to provide, as counsel contends, for a legacy duty only."

This language correctly characterizes the nature and effect of the tax as imposed under the amendment of 1914; but that act, under which the present cases arise, instead of reaching "the whole of the New Jersey property of a non-resident when turned over to the executor or administrator at the domicile of the decedent," now confines the transfer tax upon the property of non-resident decedents to real estate and tangible personal property within the State, the stock of New Jersey corporations, and the stock of national banks located within the State.

The tax is, then, one upon the transfer of property in New Jersey, to be paid upon turning it over to the administrator or executor at the domicile of the decedent. That transfers of this nature are within the taxing power of the State, and that taxes may be assessed upon such rights owing their existence to local laws, and to them alone, is not disputed. The right to inherit property, or to receive it under testamentary disposition, has been so frequently

held to be the creation of stautory law, that it is quite unnecessary to cite the decisions which have maintained the principle. While this is confessedly true, the assessment of such taxes is, of course, subject to applicable limitations of the state and federal constitutions; it is with the latter class only that this court has to do.

(1) Taking up, then, the objections raised under the Federal Constitution, it is said that the law (*a*) denies to citizens of other States the privileges and immunities granted to citizens of the State of New Jersey, in violation of par. 1, § 2, Art. IV, of the Federal Constitution, which reads: "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States;" (*b*) abridges the privileges and immunities of plaintiffs in error, the deceased persons whom they represent, and those taking by will or intestacy under them, as citizens of the United States, in contravention of § 1 of the Fourteenth Amendment.

The provision quoted from Art. IV of the Constitution was intended to prevent discrimination by the several States against citizens of other States in respect of the fundamental privileges of citizenship. As is said by Judge Cooley in his Constitutional Limitations, 7th ed., p. 569: "It appears to be conceded that the Constitution secures in each State to the citizens of all other States the right to remove to, and carry on business therein; the right by the usual modes to acquire and hold property, and to protect and defend the same in the law; the right to the usual remedies for the collection of debts and the enforcement of other personal rights; and the right to be exempt, in property and person, from taxes or burdens which the property, or persons, of citizens of the same State are not subject to." *Paul* v. *Virginia*, 8 Wall. 168, 180; *Ward* v. *Maryland*, 12 Wall. 418, 430.

The Fourteenth Amendment recognized a distinction between citizenship of the United States and citizenship

of one of the States. It provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." What those privileges and immunities were was under consideration in *Slaughter-House Cases*, 16 Wall. 36, 72–79, where it was shown (pp. 77–78) that it was not the purpose of this Amendment, by the declaration that no State should make or enforce any law which should abridge the privileges and immunities of citizens of the United States, to transfer from the States to the Federal Government the security and protection of those civil rights that inhere in state citizenship; and (p. 79) that the privileges and immunities of citizens of the United States thereby placed beyond abridgment by the States were those which owe their existence to the Federal Government, its national character, its constitution, or its laws. To the same effect is *Duncan* v. *Missouri*, 152 U. S. 377, 382.

We are unable to discover in the statute before us, which regulates and taxes the right to succeed to property in New Jersey upon the death of a non-resident owner, any infringement of the rights of citizenship either of the States or of the United States, secured by either of the consitututional provisions referred to. We have held that the protection that they afford to rights inherent in citizenship are not infringed by the taxation of the transfer of property within the jurisdiction of a State passing by will or intestacy where the decedent was a non-resident of the taxing State, although the entire succession was taxed in the State where he resided. *Blackstone* v. *Miller*, 188 U. S. 189, 207.

Upon this point it is unnecessary to decide whether the case might not be rested on a much narrower ground. The alleged discrimination, here complained of, so far as privileges and immunities of citizenship are concerned, is not strictly applicable to this statute because the difference in the method of taxation rests upon residence

and not upon citizenship. *La Tourette* v. *McMaster*, 248 U. S. 465.

(2) It is next contended that the effect of including the property beyond the jurisdiction of the State in measuring the tax, amounts to a deprivation of property without due process of law because it in effect taxes property beyond the jurisdiction of the State.

It is not to be disputed that, consistently with the Federal Constitution, a State may not tax property beyond its territorial jurisdiction, but the subject-matter here regulated is a privilege to succeed to property which is within the jurisdiction of the State. When the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed. This principle has been frequently declared by decisions of this court. The previous cases were reviewed and the doctrine applied in *Kansas City, Fort Scott & Memphis Ry. Co.* v. *Kansas*, 240 U. S. 227, 232. After deciding that the privilege tax, there involved, did not impose a burden upon interstate commerce, this court held that it was not in substance and effect a tax upon property beyond the State's jurisdiction, although a large amount of the property, which was referred to as a measure of the assessment, was situated outside of the State. In the present case the State imposes a privilege tax, clearly within its authority, and it has adopted as a measure of that tax the proportion which the specified local property bears to the entire estate of the decedent. That it may do so within limitations which do not really make the tax one upon property beyond its jurisdiction, the decisions to which we have referred clearly establish. The transfer of certain property within the State is taxed by a rule which considers the entire estate in arriving at the amount of the tax. It is in no just sense a tax upon the foreign property, real or personal. It is only in instances where the State exceeds its authority in imposing a tax upon a subject-matter within its

jurisdiction in such a way as to really amount to taxing that which is beyond its authority, that such exercise of power by the State is held void. In cases of that character the attempted taxation must fail. *Looney v. Crane Co.*, 245 U. S. 178; *International Paper Co.* v. *Massachusetts*, 246 U. S. 135. To say that to apply a different rule regulating succession to resident and non-resident decedents is to levy a tax upon foreign estates, is to distort the statute from its purpose to tax the privilege, which the statute has created, into a property tax, and is unwarranted by any purpose or effect of the enactment, as we view it.

(3) It is further contended that the tax bears so unequally upon non-residents as to deny to them the equal protection of the laws.

The subject of taxes of this character was given full consideration by this court in *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, in which case a graded legacy and inheritance tax law of the State of Illinois was sustained. The statute exempted all estates valued at less than $20,000, if passing to near relations, or at less than $500 if passing to those more remote, made the rate of tax increasingly greater as the inheritances increased, and assessed it differently according to the relationship of the beneficiary to the testator or intestate. The statute was attacked as void under the equal protection clause of the Fourteenth Amendment, but was held to be valid. Of this class of taxes the court said (p. 288): "They [inheritance taxes] are based upon two principles: 1. An inheritance tax is not one on property, but one on the succession. 2. The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the States may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power

by the provisions of the respective state constitutions requiring uniformity and equality of taxation."

And upon examining (pp. 296, 297) the classification upon which the provisions of the Illinois statute were based, the court found there was no denial of the equal protection of the laws either in discriminating between those lineally and those collaterally related to decedent, and those standing as strangers to the blood, or in increasing the proportionate burden of the tax progressively as the amount of the benefit increased.

Equal protection of the laws requires equal operation of the laws upon all persons in like circumstances. Under the statute, in the present case, the graduated taxes are levied equally upon all interests passing from non-resident testators or intestates. The tax is not upon property, but upon the privilege of succession, which the State may grant or withhold. It may deny it to some and give it to others. The State is dealing in this instance not with the transfer of the entire estate, but only with certain classes of property that are subject to the jurisdiction of the State. It must find some rule which will adequately deal with this situation. It has adopted that of the proportion of the local estate in certain property to the entire estate of the decedent. In making classification, which has been uniformly held to be within the power of the State, inequalities necessarily arise, for some classes are reached, and others omitted, but this has never been held to render such statutes unconstitutional. *Beers* v. *Glynn*, 211 U. S. 477. This principle has been recognized in a series of cases in this court. *Board of Education* v. *Illinois*, 203 U. S. 553; *Campbell* v. *California*, 200 U. S. 87; *Keeney* v. *New York*, 222 U. S. 525. It has been uniformly held that the Fourteenth Amendment does not deprive the States of the right to determine the limitations and restrictions upon the right to inherit property, but "at the most can only be held to restrain such an exercise of power as would

exclude the conception of judgment and discretion, and which would be so obviously arbitrary and unreasonable as to be beyond the pale of governmental authority." *Campbell* v. *California*, 200 U. S. 95. In upholding the validity of a graduated tax upon the transfer of personal property, to take effect upon the grantor's death, we said in *Keeney* v. *New York, supra*, p. 535: "The validity of the tax must be determined by the laws of New York. The Fourteenth Amendment does not diminish the taxing power of the State, but only requires that in its exercise the citizen must be afforded an opportunity to be heard on all questions of liability and value, and shall not, by arbitrary and discriminatory provisions, be denied equal protection. It does not deprive the State of the power to select the subjects of taxation. But it does not follow that because it can tax any transfer (*Hatch* v. *Reardon*, 204 U. S. 152, 159), that it must tax all transfers, or that all must be treated alike."

In order to invalidate this tax it must be held that the difference in the manner of assessing transmission of property by testators or intestates, as between resident and non-resident decedents, is so wholly arbitrary and unreasonable as to be beyond the legitimate authority of the State. We are not prepared so to declare. The resident testator or intestate stands in a different relation to the State than does the non-resident. The resident's property is usually within the ready control of the State, and easily open to inspection and discovery for taxation purposes, by means quite different from those afforded in cases of local holdings of non-resident testators or intestates. As to the resident, his entire intangible, and usually most of his tangible property, pay tribute to the State when transferred by will or intestacy; the transfer of the non-resident's estate is taxed only so far as his estate is located within the jurisdiction and only so far as it comes within the description of "real property within this State, or of goods, wares,

and merchandise within this State, or of shares of stock of corporations of this State, or of national banking associations located in this State." Simple contract debts owing by New Jersey debtors to non-residents and some other kinds of property of non-residents are exempt, although it is settled that, for the purpose of founding administration, simple contract debts are assets at the domicile of the debtor; *Wyman* v. *Halstead,* 109 U. S. 654, 656; and that the State of the debtor's domicile may impose a succession tax; *Blackstone* v. *Miller,* 188 U. S. 189, 205; *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394, 401.

The question of equal protection must be decided as between resident and non-resident decedents as classes, rather than by the incidence of the tax upon the particular estates whose representatives are here complaining. Absolute equality is impracticable in taxation, and is not required by the equal protection clause. And inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law.

In our opinion, there are substantial differences which within the rules settled by this court permit the classification which has been accomplished by this statute. *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 367, and cases cited.

Finding no error in the judgments of the Court of Errors and Appeals of the State of New Jersey, the same are

*Affirmed.*

MR. JUSTICE HOLMES dissenting.

Many things that a legislature may do if it does them with no ulterior purpose, it cannot do as a means to reach what is beyond its constitutional power. That I understand to be the principle of *Western Union Telegraph Co.* v. *Kansas; Pullman Company* v. *Kansas,* and other cases

in 216 U. S. *Western Union Telegraph Co.* v. *Foster*, 247 U. S. 105, 114. New Jersey cannot tax the property of Hill or McDonald outside the State and cannot use her power over property within it to accomplish by indirection what she cannot do directly. It seems to me that that is what she is trying to do and therefore that the judgments of the Court of Errors and Appeals should be reversed.

It seems to me that when property outside the State is taken into account for the purpose of increasing the tax upon property within it, the property outside is taxed in effect, no matter what form of words may be used. It appears to me that this cannot be done, even if it should be done in such a way as to secure equality between residents in New Jersey and those in other States.

New Jersey could not deny to residents in other States the right to take legacies which it granted to its own citizens, and therefore its power to prohibit all legacies cannot be invoked in aid of a principle that affects the foreign residents alone. In *Kansas City, Fort Scott & Memphis Ry. Co.* v. *Kansas*, 240 U. S. 227, 235, the State could have refused incorporation altogether and therefore could impose the carefully limited condition that was upheld.

The CHIEF JUSTICE, MR. JUSTICE VANDEVANTER and MR. JUSTICE McREYNOLDS concur in the opinion that I express.