In the Matter of the Estate of EMMA C. RUEFF, Deceased.

Surrogate's Court, New York County, November 27, 1935.

*Edgar Hirschberg*, for the State Tax Commission.

*Briesen & Schrenk* [*Clarence W. Archibold* of counsel], for the ancillary administrator c. t. a.

DELEHANTY, S. Appeal is taken from the *pro forma* order of this court which fixed an estate tax on the basis of the report of the appraiser. The appeal attacks the constitutionality of section 249-p of article 10-C of the Tax Law which became effective September 1, 1930. Deceased died August 31, 1931, a resident of the State of New Jersey. In the schedules upon which the appraiser acted there were listed as property owned by deceased in her lifetime various items of intangible personal property, the situs of which in law was outside this State. The schedules listed real property and tangible personal property situated in this State.

An understanding of the problem presented by the appeal requires a statement of the arithmetic of the estate. The gross estate — including intangibles — was $375,883.90. Debts and other items deductible from the gross under the Tax Law of the State of New York amounted to $314,761.59. The balance representing the net estate was, therefore, $61,122.31. The intangibles included in the gross estate were valued at $78,743.90. It is apparent, therefore, that if the value of the intangibles had been excluded from the gross estate and had the same deductions been made there would have been a deficit of $17,621.59 reported instead of a net estate of $61,122.31. No tax can be assessed on a deficit.

The State Tax Commission proceeded on the basis that under the Tax Law it was warranted in including the value of the intangible personal property for the purpose of fixing *pro rata* the tax applicable to the property physically within this State. Accordingly after fixing the net estate (including intangibles) at $61,122.31 it made allowance for exemptions of $12,894.40 and found a theoretical taxable residue of $48,227.91. This concededly would be the estate taxable in New York had deceased died a resident of New York. In the case of the estate of a resident of New York the tax would be $385.82. The Tax Commission has assessed a tax of $302.26. It arrived at that sum by multiplying $385.82 (the tax payable on the assumption deceased was a New York resident) by a fraction of which the denominator was a sum equal to the value of the gross estate inclusive of intangibles and of which the numerator was a sum equal to the value of the gross estate excluding the intangibles. Thus it asserts that it has ascertained and fixed a tax prorated so as to burden only the property situated in this State.

Authority for this procedure is claimed by reason of section 249-p of article 10-C of the Tax Law which says:

" § 249-p. Tax on estates of nonresident decedents. A tax is hereby imposed upon the transfer of so much of the net estate of every person dying on or after the effective date of this article, who, at the time of death, was a nonresident of this state, as con-

sists of real property situated and tangible personal property having an actual situs in this state. The amount of the tax on such real and tangible personal property shall be determined as follows:

"Ascertain the amount of tax which would be payable under this article if the decedent had died a resident of this state with all his property (except real property situated and tangible personal property having an actual situs outside this state) situated or located within this state, and multiply the net tax so ascertained by a fraction the denominator of which shall be the value of the gross estate as ascertained for the purpose of computing such tax and the numerator of which shall be the said gross estate value of the real property situated and the tangible personal property having an actual situs in this state. The product shall be the amount of tax payable to this state. No credit shall be allowed against the tax so determined."

The ancillary administrator c. t. a. asserts that this provision of law is unconstitutional because under its terms a tax is imposed upon intangible property of a non-resident. He asserts that no matter what the formula may be which is prescribed in the law the actual operation of the law is to impose such a tax. He argues that such a tax is beyond the power of this State and that the formula adopted in the statute will not save it from condemnation. He recognizes the pertinence to the problem of the decision of the United States Supreme Court in *Maxwell* v. *Bugbee* (250 U. S. 525). He asserts, however, that the case is no longer authority and that later cases in the United States Supreme Court have overruled it. In support of his contention that the Tax Law provision is unconstitutional he cites *Farmers Loan & Trust Co.* v. *Minnesota* (280 U. S. 204); *Frick* v. *Pennsylvania* (268 id. 473); *First National Bank* v. *Maine* (284 id. 312).

In *Farmers Loan & Trust Co.* v. *Minnesota* (*supra*) the Supreme Court held that bonds, even if issued by the State seeking to impose the tax, could not be subjected to an inheritance tax when owned by a citizen of another State. The majority opinion said (1929): "In this Court the presently approved doctrine is that no State may tax anything not within her jurisdiction without violating the Fourteenth Amendment."

In *First National Bank* v. *Maine* (*supra* [1931]) the majority opinion said (p. 330): "Practical considerations of wisdom, convenience and justice alike dictate the desirability of a uniform general rule confining the jurisdiction to impose death transfer taxes. as to intangibles to the state of domicile; * * *. The requirements of due process of law accord with this view."

In *Maxwell* v. *Bugbee* (*supra* [1919]) the court considered a statute of the State of New Jersey which imposed in that State upon the transfer of property of a non-resident decedent such ratio of the tax to which the estate would have been subject if the non-resident had been a resident of New Jersey as the property located in New Jersey bore to the entire estate of the non-resident wherever situated. The cited case sustained the validity of that law by a court divided five to four. In the dissenting opinion Mr. Justice HOLMES said:

" Many things that a legislature may do if it does them with no ulterior purpose, it cannot do as a means to reach what is beyond its constitutional power. * * * New Jersey cannot tax the property of Hill or McDonald outside the State and cannot use her power over property within it to accomplish by indirection what she cannot do directly. It seems to me that that is what she is trying to do and therefore that the judgments of the Court of Errors and Appeals should be reversed.

" It seems to me that when property outside the State is taken into account for the purpose of increasing the tax upon property within it, the property outside is taxed in effect, no matter what form of words may be used. It appears to me that this cannot be done, even if it should be done in such a way as to secure equality between residents in New Jersey and those in other States."

*Maxwell* v. *Bugbee* seems to have relied very substantially upon *Blackstone* v. *Miller* (188 U. S. 189). *Blackstone* v. *Miller* has been expressly overruled (*Farmers Loan & Trust Co.* v. *Minnesota, supra,* p. 209; *First National Bank* v. *Maine, supra,* p. 324). There is suggestion in the opinion in *Maxwell* v. *Bugbee* that the result there might be justified by the decision in *LaTourette* v. *McMaster* (248 U. S. 465). The case last cited held valid a statute of South Carolina which discriminated between residents and non-residents of that State with relation to the license of insurance agents therein. The statute was held to limit citizens of other States lawfully, since it operated to limit likewise citizens of South Carolina resident elsewhere. Thus the court found no discrimination against citizens of other States. While there is a difference between citizenship of the United States and citizenship of a State ( *United States* v. *Cruikshank,* 92 U. S. 542), and while the Fourteenth Amendment forbids abridgement by a State of the privileges and immunities of citizens of the United States only (*Slaughter House Cases,* 83 U. S. [16 Wall.] 36, 74), there is no support for the idea of difference between residence and citizenship in respect of tax matters because the term " residence " when used in the Tax Law is synonymous with " domicil " and hence with " citizenship." As is said in the Restatement by the American Law Institute of the Law of Conflict

of Laws (Chap. 2, § 9, p. 20): " In statutes relating to taxation and voting, residence means domicil unless the contrary is indicated in the statute." Of course a citizen of the United States domiciled in a State thereof has State citizenship in the State of domicil as well. He may temporarily reside in another State, retaining his citizenship of the State of domicil. The discrimination between " citizenship " (*i. e.,* " domicil ") and " residence " made in *LaTourette* v. *McMaster* (*supra*) is not applicable to a tax question because the term " resident " in the Tax Law means a domiciled person and hence a citizen. In other words, the provisions in the Tax Law could be revised to refer to taxation on citizens of New York State and on non-citizens thereof without changing their meaning. So, *LaTourette* v. *McMaster* (*supra*) has no pertinence.

The decision in *Maxwell* v. *Bugbee* (*supra*) has been referred to in the later decisions of the same court in such language as to indicate that when the question there decided is again presented in a form requiring such action the Supreme Court of the United States will overrule the decision. That result seems inevitable in view of the overruling by the court of *Blackstone* v. *Miller* (*supra*) on which the decision was based in part and of the comments made in later cases. In *Frick* v. *Pennsylvania* (*supra*, pp. 495, 496) the Supreme Court said: " The state court cited in support of its view *Maxwell* v. *Bugbee*, 250 U. S. 525, 539. The case is on the border line, as is evidenced by the dissent of four members of the Court. But it does not go so far as its citation by the state court suggests. The tax there in question was one imposed by New Jersey on the transfer of stock in a corporation of that State. The stock was part of the estate of a decedent who had resided elsewhere. The state statute, described according to its essence, provided for a tax graduated in rate according to the value of the entire estate, and required that where the estate was partly within and partly without the State the transfer of the part within should bear a proportionate part of what according to the graduated rate would be the tax on the whole. The only bearing which the property without the State had on the tax imposed in respect of the property within was that it affected the rate of the tax. Thus, if the entire estate had a value which put it within the class for which the rate was three per cent, that rate was to be applied to the value of the property within the State in computing the tax on its transfer, although its value separately taken would put it within the class for which the rate was two per cent. *There was no attempt, as here, to compute the tax in respect of the part within the State on the value of the whole.* The Court sustained the tax, but distinctly recognized that the State's power was subject to constitutional limitations, including the due

process of law clause of the Fourteenth Amendment, and also that it would be a violation of that clause for a State to impose a tax on a thing within its jurisdiction ' in such a way as to really amount to taxing that which is beyond the authority.' " (Italics not in original.)

In *Smith* v. *Loughman* (245 N. Y. 486) the case of *Maxwell* v. *Bugbee* (*supra*) is referred to with approval in commenting on the idea (in support of which the case is cited) that a taxing system may be upheld though " occasionally and incidentally " wrong may come to individuals. The question here is not one of incidental or occasional injury. Here there is a plan of taxation which is designed to subject to a tax in this State the intangibles of a non-citizen of this State. Of course it is argued that the law uses only the value of the intangibles as a factor in computing the tax on property in this State but that is one of those forms of words which Mr. Justice HOLMES and the three judges dissenting with him in *Maxwell* v. *Bugbee* (*supra*) said could not substitute for the essential quality of the act done. No form devised by a State " as a means to reach what is beyond its constitutional power " will save an invalid law. So much of the quoted language in *Frick* v. *Pennsylvania* as deals with the matter of rate of tax as distinguished from the imposition of tax has not been overlooked. It may be that the State could validly consider property outside the State in determining the rate applicable to property within the State which is taxable. The court in *Frick* v. *Pennsylvania* (*supra*) indicated that it might approve a tax law which used the value of the intangibles solely as a means of determining the rate of tax as distinguished from using the value as establishing the fact of taxability. The distinction is substantial though it might be said loosely that fixing a tax is fixing a rate. The cases do not uphold that idea, however.

There is no escape from the fact that the Tax Law purports to authorize the State Tax Commission to reach out into a sister State and for all practical purposes bring into this State intangibles located in another State and use them as basis for a tax. Without the addition of the value of deceased's intangibles there is no estate here subject to tax. The Tax Law here says what deductions shall be made in ascertaining the net estate. When those deductions are made and applied to the property tangibly within this State there is no property here subject to tax. The Tax Law provision is a mere formula adopted to evade the constitutional limitation and must be held an insufficient basis to support a tax, at least in situations where without using the value of the intangibles there is no estate to be taxed.

The natural hesitancy of a court of first instance to rule against the enforcibility of a statute should yield in this case because the only case in the United States Supreme Court which is cited in support of the State law has itself been held of doubtful authority by the later decisions of the same court. In such circumstances this court should not put upon this estate and its representative the burden of taking up this decision for review.

Accordingly the appeal is sustained, the *pro forma* order fixing tax is modified and the estate is held non-taxable.