In the Matter of the Estate of MARY M. LAGERGREN, Deceased.

STATE TAX COMMISSION, Appellant.

BENJAMIN MOORE et al., as Executors of MARY M. LAGERGREN, Deceased, Respondents.

185

Argued October 5, 1937; decided November 23, 1937.

*Mortimer M. Kassell* for appellant. The provisions of section 249-p of the Tax Law (Cons. Laws, ch. 60) are not in conflict with the due process clause of the Federal Constitution and were correctly construed by the estate tax appraiser. (*Matter of Bronson,* 150 N. Y. 1; *Matter of New York & L. I. Bridge Co.,* 90 Hun, 312; *Mangan* v. *City of Brooklyn,* 98 N. Y. 585; *People ex rel. Onondaga County Savings Bank* v. *Butler,* 147 N. Y. 164; *Tompkins* v. *Hunter,* 149 N. Y. 117; *Fire Department* v. *Stanton,* 159 N. Y. 225; *Maxwell* v. *Bugbee,* 250 U. S. 525; *Blackstone* v. *Miller,* 188 U. S. 189; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412; *Kansas City, F. S. & M. Ry. Co.* v. *Botkin,* 240 U. S. 227;

*Educational Films Corp.* v. *Ward,* 282 U. S. 379; *First Nat. Bank* v. *Maine,* 284 U. S. 312; *Knowlton* v. *Moore,* 178 U. S. 41; *Greiner* v. *Lewellyn,* 258 U. S. 384; *Blodgett* v. *Silberman,* 277 U. S. 1; *People ex rel. Northern Finance Corp.* v. *Lynch,* 262 N. Y. 477; 290 U. S. 601; *Pacific Co.* v. *Johnson,* 285 U. S. 480.)

*Homer W. Lynch* for respondents. The order of the Surrogate modifying the *pro forma* order was properly made. (*Matter of Rueff,* 157 Misc. Rep. 680.) Section 249-p of the Tax Law, if strictly and literally construed, is unconstitutional in that it violates the due process clause of the Federal Constitution. (*First Nat. Bank* v. *Maine,* 284 U. S. 312; *People ex rel. Burby* v. *Howland,* 155 N. Y. 270; *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. 204; *Matter of Bankers Trust Co.* v. *Graves,* 245 App. Div. 166; 270 N. Y. 316.)

LOUGHRAN, J. This appeal brings here for decision the question of the constitutional validity of section 249-p of the Tax Law (Cons. Laws, ch. 60), which prescribes a " Tax on estates of nonresident decedents." It is thereby provided:

" A tax is hereby imposed upon the transfer of so much of the net estate of every person dying on or after the effective date of this article, who, at the time of death, was a nonresident of this state, as consists of real property situated and tangible personal property having an actual situs in this state. The amount of the tax on such real and tangible personal property shall be determined at follows:

" Ascertain the amount of tax which would be payable under this article if the decedent had died a resident of this state with all his property (except real property situated and tangible personal property having an actual situs outside this state) situated or located within this state, and multiply the net tax so ascertained by a fraction the denominator of which shall be the value of the gross estate as ascertained for the purpose of computing such

tax and the numerator of which shall be the said gross estate value of the real property situated and the tangible personal property having an actual situs in this state. The product shall be the amount of tax payable to this state. No credit shall be allowed against the tax so determined.

" The tax imposed by this section shall be paid by the executor, who shall thereupon charge the same against and collect it from the persons interested in the estate in order that it shall be proportionately borne by those who have received the benefit."

Mary Moore Lagergren died May 19, 1933, a non-resident of this State. She left a will which was admitted to probate by the Surrogate's Court of the county of New York. At the direction of the Surrogate an appraiser fixed the fair market value of property of the estate subject to tax under the statute. His report showed a gross estate (including intangibles) of $818,954.74, total deductions of $254,230.33, and a net estate of $564,724.41. The total valuation of real property situated and tangible personal property having an actual situs within this State was reported to be $769,250. Exemptions allowed in the sum of $10,000 were deducted from the net estate of $564,724.41, leaving $554,724.41 as the estate the transfer of which would be taxable had the decedent died a resident of this State. In that event the tax would be $16,636.22.

In accordance with section 249-p, the Surrogate by a *pro forma* order found that $\dfrac{769250.00}{818954.74}$, or 93.9307 per cent of $16,636.22, was the amount of tax payable to this State, viz., $15,626.52.

Intangibles included in the denominator of this fraction were valued at $42,739.81. The executors thereafter moved to modify the *pro forma* order " in so far as said order assesses a tax upon the basis of intangible personal property not situated within this State." This motion

was granted by an order which deducted the value of the intangibles from that of the gross estate and fixed the total tax accordingly at $14,499.23, a reduction of $1,127.29. The State Tax Commission appeals from the affirmance of that order by the Appellate Division.

It is clear that the transfer of the intangibles owned by this non-resident decedent cannot be taxed in this proceeding. This transfer — the taxable event — occurred at the decedent's domicile outside this State. A tax thereon would offend the guaranty of due process. (U. S. Const., 14th Amendt., § 1; *First Nat. Bank* v. *Maine*, 284 U. S. 312. Cf. *New York ex rel. Whitney* v. *Graves*, 299 U. S. 366.) Is that defect to be imputed to section 249-p of the Tax Law?

In *Maxwell* v. *Bugbee* (250 U. S. 525) a New Jersey statute which imposed an inheritance tax on the succession to local property of a non-resident decedent was upheld, although thereby " the tax was first ascertained on the entire estate as if it were the estate of a resident of the State of New Jersey, with all the decedent's property both real and personal located there," and " the tax was then apportioned and assessed in the proportion that the taxable New Jersey estate bore to the entire estate " (p. 534). It was there contended " that the effect of including the property beyond the jurisdiction of the State in measuring the tax, amounts to a deprivation of property without due process of law because it in effect taxes property beyond the jurisdiction of the State " (p. 539). This contention the court rejected for reasons stated as follows: " When the State levies taxes within its authority, property not in itself taxable by the State may be used as a measure of the tax imposed * * *. In the present case the State imposes a privilege tax, clearly within its authority, and it has adopted as a measure of that tax the proportion which the specified local property bears to the entire estate of the decedent. * * * The transfer of certain property within the State is taxed by a rule which considers the entire estate

in arriving at the amount of the tax. It is in no just sense a tax upon the foreign property, real or personal" (p. 539). (See *Frick* v. *Pennsylvania*, 268 U. S. 473, 495, 496.)

The executors do not deny that, so far as the issue has been determined by *Maxwell* v. *Bugbee*, the statute here challenged does not attempt to impose an extraterritorial tax in contravention of due process. We are told, however, that what the court said in that case must be read in the light of its later decisions condemning double taxation (*First Nat. Bank* v. *Maine, supra; Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193, 208, 209), and that, so read, the case cannot now be deemed to be a precise authority. This, of course, is a Federal and not a State question, and it is to the highest court of the nation that we must look for the answer.

In *Great Atlantic & Pacific Tea Co.* v. *Grosjean* (301 U. S. 412) there was presented the question whether the Fourteenth Amendment was offended by the tax imposed by a Louisiana statute on chain stores. The law provided that the tax "shall be based on the number of stores or mercantile establishments included under the same general management, supervision, owner-ship or control, whether operated in this State or not, and shall be fixed and graded as follows to wit: (1) Upon stores or mercantile establishments operated in this State and belonging to a chain or group having a total of not more than ten stores, the annual license shall be Ten ($10.00) Dollars for each such store operated in this State" (p. 418). Other provisions progressively increased the rate per store in Louisiana of larger chains. Holding that this legislation was not invalid as an attempt to tax property and activities which were beyond the State's jurisdiction, the court said: "The State may not tax real property or tangible personal property lying out-side her borders; nor may she lay an excise or privilege tax upon the exercise or enjoyment of a right or privilege

in another State derived from the laws of that State and therein exercised and enjoyed. But, as we have seen, the subject of the tax in question is the prosecution of a defined business activity within the State of Louisiana,— the conduct of a retail store which is a part of a chain under a single management, ownership or control,— a legitimate subject of a license or occupation tax. The measure of the exaction is the number of units of the chain within the State,— a measure sanctioned by our decisions. The rate of tax for each such unit is fixed by reference to the size of the entire chain. In legal contemplation the State does not lay a tax upon property lying beyond her borders nor does she tax any privilege exercised and enjoyed by the taxpayer in other states " (pp. 424, 425). While the court went on to rest its decision on much broader considerations than " conceptions of subject, measure and rate of tax," it also said: " *Maxwell* v. *Bugbee*, 250 U. S. 525, goes far to sustain the validity of the act " (p. 425).

Thus there is no warrant for our saying that the point of constitutional law announced in *Maxwell* v. *Bugbee* has been repudiated. Only the court which decided it can say whether fresh consideration of that border-line case is desirable. It follows that the statute before us must here be upheld as written and that the tax assessed by the original *pro forma* order is payable to this State.

In reaching the contrary conclusion, the Surrogate relied upon *Matter of Rueff* (157 Misc. Rep. 680; 249 App. Div. 617). In that case we dismissed an appeal taken without leave as in a case wherein is directly involved the construction of the Constitution of the United States. (Civ. Prac. Act, § 588, subd. 1.) This court found that such a question was not there directly involved. " The case could have been, and was, decided upon the construction of a statute." (273 N. Y. 530.) We add a few words in explanation of that ruling.

" Gross estate " is defined by section 249-r of the Tax Law. The definition excludes " real property situated

and tangible personal property having an actual situs outside this state." Section 249-s provides that "the value of the net estate shall be determined by deducting from the value of the gross estate" the full amount of debts, expenses and losses. In the *Rueff* case the net estate, so ascertained, was $61,122.31. The intangibles included in the gross estate were valued at $78,743.90. On that showing the Surrogate there said: "It is apparent, therefore, that if the value of the intangibles had been excluded from the gross estate and had the same deductions been made there would have been a deficit of $17,621.59 reported instead of a net estate of $61,122.31. No tax can be assessed on a deficit." (157 Misc. Rep. 680, 681.) It is true that the statute does not say that the deductions allowed by section 249-s are limited by the formula prescribed by section 249-p or that only such portion thereof shall be made as will leave a taxable net estate. The statute directs that such deductions shall be made. Accordingly in the *Rueff* case one ground of the decision below was that the statute, properly construed, authorized no tax in the situation there presented. "The Tax Law here says what deductions shall be made in ascertaining the net estate. When those deductions are made and applied to the property tangibly within this State there is no property here subject to tax." (157 Misc. Rep. at p. 685.)

In the present case the estate (exclusive of intangibles) is $521,984.60 after all deductions are made.

The order of the Appellate Division should be reversed and that of the Surrogate's Court modified in accordance with this opinion, and as so modified affirmed, and the matter remitted to the Surrogate's Court for further proceedings in accordance with this opinion, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.