In the Matter of the Estate of LUCY C. WATSON, Deceased.

Surrogate's Court, Oneida County, June 23, 1945.

*Leonard W. Burdick* for appellant.

*Mortimer M. Kassell, Francis Kelliher* and *Jacob Tumposky* for State Tax Commission, respondent.

RINGROSE, S. On December 18, 1940, a *pro forma* order was entered herein, assessing a New York estate tax in the amount of $1,186.79, which was paid. On June 15, 1944, an amended order (erroneously dated July 15, 1944), was entered assessing an additional tax of $449.57. From the latter order the executor appeals.

Lucy Carlile Watson, the testatrix, died on December 12, 1938.

The additional tax was levied under the authority contained in the next to the last paragraph of section 249-n of the Tax Law, which reads as follows: " Notwithstanding any of the foregoing provisions of this section or any other provision of this article, there shall be imposed upon the transfer of the net estate of every person who at the time of death was a resident of this state, a tax equal to the maximum credit allowable to the estate of such decedent against the United States estate tax imposed with respect thereto, except that proper reduction of the amount of such tax shall be made on account of any real or tangible personal property forming a part of the gross estate of such decedent which is located outside of the state of New York; but the provisions of this paragraph shall in no

event have the effect of reducing the tax otherwise imposed by this article.''

The value of the gross estate, as determined by the Federal audit, was $330,657.92, of which amount the sum of $180,000 represented the value of certain real property located in the State of Rhode Island. The net estate, subject to the basic Federal tax, was $199,642.53. The Federal tax amounted to the sum of $4,489.28. The allowable credit, computed at 80% of the last-mentioned sum, amounted to $3,591.42.

The net estate, subject to the New York estate tax, was determined as $118,678.89, upon which a tax of $1,186.79 was assessed.

The additional tax was computed as the difference between the latter amount and the figure obtained by multiplying the sum of $3,591.42 (the allowable credit) by $\frac{150657.2}{330657.92}$. The numerator of the fraction represents the gross value of the New York property and the denominator the gross estate, as determined by the Federal audit.

It is urged by the respondent, in substance, at least, that the above formula is dictated by the provisions of section 249-n of the Tax Law, heretofore quoted, and particularly the part thereof which reads as follows: '' * * * except that proper reduction of the amount of such tax shall be made on account of any real or tangible personal property forming a part of the gross estate of such decedent which is located outside of the state of New York * * *.''

The appellant contends that the application of the formula, urged by the respondent, results in discriminatory taxation and is therefore unconstitutional, and further that the amendment contains no authority, either express or implied, justifying the adoption of the rule applied.

The logic of the claim of discrimination may best be illustrated by assuming that a resident decedent left an estate consisting of property in this State, of the value of $100,000 in excess of exemptions, and real estate of the same value in each of nine other States. The basic Federal tax would amount to the sum of $41,500 (Internal Revenue Code, § 810; U. S. Code, tit. 26, § 810). The allowable credit would amount to the sum of $33,200. Applying the same formula, the amount of this credit allocable to the State of New York would be one tenth of the above, or $3,320. The highest possible tax, to which the State of New York would be entitled, would amount to the sum of $1,000 (Tax Law, § 249-n), whereas, under the formula urged in the instant proceeding, the State of New York would be entitled to an additional $2,320. The obvious reason for the

discrepancy is due to the higher bracket of taxation applicable to the total estate taxable in the Federal proceeding.

This argument is countered by the assertion that if the amount were not paid to the State of New York, it would have been collected by the Federal Government, and therefore, the estate is not injured. Assuming that the rate of taxation in the several States was uniform, the rule would be sound, but, if the rates in the other States were higher, as in this case, the total tax collectible by all the States within which the property is located and the Federal Government would exceed that which would be payable had all property been located in this State.

In *Matter of Vanderbilt* (281 N. Y. 297, 313–314) the limitation of the authority of the State to tax is defined as follows: '' The State has a broad power of taxation, but in the exercise of that power it may not provide a measure for a tax which is entirely arbitrary and which produces inequality and injustice so great as to deprive a taxpayer of the equal protection of the law. So it has been held that ' a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert, is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment.' (*Heiner* v. *Donnan,* 285 U. S. 312, 325.) Taxation, it has often been pointed out, is an intensely practical matter. The Legislature may not arbitrarily fix the measure of a tax by a fiction. (*Hoeper* v. *Tax Commission,* 284 U. S. 206.) Always there must be some reason based on fact, not fiction, for imposing a particular tax upon a particular class, and absence of any basis for the classification may not be hidden by an arbitrary creation of a conclusive presumption. (*Schlesinger* v. *Wisconsin,* 270 U. S. 230.) The Supreme Court has authoritatively stated the rule which in such cases creates invalidity: ' a statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert, is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment.' A statutory rule is beyond the power of the Legislature if the result would be ' that upon those who succeed to the decedent's estate there is imposed the burden of a tax, measured in fact by property which comprises no portion of the estate, to which the estate is in no way related, and from which the estate derives no benefit of any description.' (*Heiner* v. *Donnan, supra,* p. 327; cf. *Nichols* v. *Coolidge,* 274 U. S. 531; *Frew* v. *Bowers,* 12 Fed. Rep. [2d] 625.)''

The question involved in *Matter of Vanderbilt (supra)* concerned the taxability of property, allegedly forming no part

of the estate, while the present controversy concerns the imposition of a tax on real property not within the jurisdiction of the State to tax. Both are governed by the same fundamental principles of law. The real property of this decedent, situate in Rhode Island, is subject to the laws of that State, both as to intestate succession and testamentary disposition.

It is urged by the Tax Commission that the formula adopted in computing the tax herein follows that provided by section 249-p of the Tax Law for the computation of the tax on the estate of a nonresident, and that the constitutionality of the same has been established. (*Matter of Lagergren,* 276 N. Y. 184; *Matter of Harding,* 279 N. Y. 142.)

Although the formula was approved, the question as to whether the real property, situated without the State of New York, may be considered in the computation of the tax was not before the court.

It was held in *Matter of Lagergren (supra)* that intangible personal property not within the State of New York may be considered a measure of the tax liability of that part of the estate within the State. This determination followed the decision in *Maxwell* v. *Bugbee* (250 U. S. 525), which appears to be based largely on the decision in *Blackstone* v. *Miller* (188 U. S. 189). The rule announced in the latter decision was expressly rejected in *Farmers Loan Co.* v. *Minnesota* (280 U. S. 204) and *First National Bank* v. *Maine* (284 U. S. 312) which, in turn, were reversed by a divided court in *State Tax Comm'n* v. *Aldrich* (316 U. S. 174). As a result, the rule prevails that intangibles may be considered in fixing the tax liability of an estate, wherever found. As to real property situate outside the State of New York, however, the statement of Mr. Justice HOLMES in the dissenting opinion in *Maxwell* v. *Bugbee (supra,* 543, 544) is still pertinent. It reads as follows: " It seems to me that when property outside the State is taken into account for the purpose of increasing the tax upon property within it, the property outside is taxed in effect, no matter what form of words may be used." It is self-evident that except for the Rhode Island real property, no basis for the claim here made of an additional tax would exist.

While the constitutionality of this provision of section 249-n has been considered at some length, owing to the emphasis placed thereon by both parties to this appeal, its determination is not deemed essential to the disposition of this controversy, due to the language of the statute under consideration.

In its report for the year 1931, the State Tax Commission recommended the amendment with the following comment: " The provisions of the New York Estate Tax statute do not secure for the state in every case as intended the full benefit of the 80 per cent credit against the federal estate tax because of the fact that the federal government may fix a larger value upon an estate than that determined for the New York estate tax. It is also possible that in the future the amount of credit allowed against the federal estate tax may be increased.

"It is recommended that section 249-n of the Tax Law be amended that New York State will, under every possible contingency, receive the full benefit of any credit which may be allowed against the federal estate tax if the federal statute were amended allowing increased credit against the federal estate tax, the amount of said credit would be automatically taken up by the amendment herein proposed."

The declared purpose of the amendment was to assure to the State of New York any additional tax to which it would be entitled as a consequence of an increase in the value of an estate in the Federal tax audit, and to avoid the necessity of further amendments to the section, in the event of a modification in the Federal credit allowance. As thus limited, the amendment (L. 1932, ch. 322) is constitutional. (*Matter of Thalmann*, 177 Misc. 1055; *Matter of Eisenberg*, 184 Misc. 387.)

Since the statute directs " that proper reduction of the amount of such tax shall be made on account of any real or tangible personal property forming a part of the gross estate of such decedent which is located outside the state of New York ", a meaning in harmony with existing law must be attributed to the words " proper reduction ".

Section 249-r of the Tax Law defines the gross estate as follows: " The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situate (except real property situated and tangible personal property having an actual situs outside this state)".

Subdivision (b) of section 249-m of the Tax Law provides that the term " gross estate " means the gross estate as determined under the provisions of section 249-r. Under section 249-n of the Tax Law, the tax is imposed upon the net estate. Subdivision (c) of section 249-m provides that the net estate means the net estate as determined under the provisions of section 249-s. The latter section prescribes what deductions may be made from the gross estate in determining the net estate.

It is thus plain that the foregoing sections embody a tax program which excludes real property situate without the State of New York in measuring the tax liability of the estate of a resident decedent. The next to the last paragraph of section 249-n does not permit the implication of a different intention. On the contrary, it is the plain mandate of the section that the tax assessed thereunder shall be reduced on account of the value of real property located outside the State of New York. Such reduction requires the exclusion from consideration, either directly or indirectly, of the value of such real property in measuring the tax liability. The operation of the section in the instant estate requires that the allowable credit, by which the additional tax liability is measured, shall be based upon the amount of the basic Federal tax computed upon the estate, exclusive of the Rhode Island real property. As thus computed, the estate is absolved from liability.

This conclusion is in harmony with the recommendation of the State Tax Commission and with the rule that an estate tax is a special tax and must be construed strictly in favor of the taxpayer. (*Howitt* v. *Street & Smith Publications, Inc.,* 276 N. Y. 345, 351; *Matter of Cohen,* 270 N. Y. 383, 386; *Matter of Harbeck,* 161 N. Y. 211, 217; *Matter of Bronson,* 150 N. Y. 1, 6.) Moreover, where an amendment to a law is susceptible of two constructions, one of which will render it void and the other valid, the latter must be adopted. (*Matthews* v. *Matthews,* 240 N. Y. 28, 35; *Matter of Fay,* 291 N. Y. 198, 206.)

It was established in this proceeding that there was omitted from the net estate, upon which the New York estate tax was originally computed, the sum of $975, representing accrued rents on the Rhode Island real property to the date of death, and a mistake in favor of the estate in the value of forty-five shares of stock of the United Fruit Corporation, amounting to the sum of $360. The additional tax upon these sums amounts to the sum of $13.35.

The amended *pro forma* order is therefore modified by reducing the amount of the additional tax assessed therein to the sum of $13.35 and as so modified is affirmed.

Decreed accordingly.