THOMAS BELL FROST, executor, *vs.* COMMISSIONER OF CORPORATIONS & TAXATION
(and a companion case[1]).

Suffolk. December 7, 1972. — March 8, 1973.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Taxation,* Succession tax. *Constitutional Law,* Due process of law, Equal protection of laws, Taxation. *Jurisdiction,* Taxation.

Massachusetts might rightfully impose an inheritance tax with respect to the transfer of assets held in Massachusetts by a trust of which one trustee had always been a Massachusetts citizen and as to which the settlor, who died a citizen and resident of other countries, had a life interest in the net income and retained a power of appointment. [241, n. 7]

Intangible Massachusetts assets held by one who died a resident of a foreign country could be subjected to inheritance taxation without violation of due process of law if such assets were extended benefits and protection by Massachusetts, notwithstanding that such intangibles had no business situs in Massachusetts, were not held in a Massachusetts trust and were not securities issued by a Massachusetts corporation, and there was such an extension of benefits and protection by Massachusetts by its supervision and regulation of a bank wherein cash of the decedent was deposited, its laws concerning the obligations of the bank to its depositors, and its laws supervising the fiduciary relationship existing between a customer and a broker with respect to brokerage accounts of the decedent. [241–247]

The imposition of an estate tax under G. L. c. 65A, § 1, third paragraph, with respect to Massachusetts intangible personal property of persons who died residents of foreign countries did not deny equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States or art. 10 of the Declaration of Rights of the Massachusetts Constitution, or violate the requirement of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution that excises be reasonable, in that c. 65A, § 1, third paragraph, does not impose an estate tax with

[1] The companion case is S. Parkman Shaw & another, trustees, *vs.* Commissioner of Corporations and Taxation.

respect to Massachusetts intangible personal property of persons who die residents of other States of the United States. [247–254]

PETITIONS filed in the Probate Court for the county of Suffolk on April 13, 1971, and March 6, 1972.

The first case was reported by *Wilson,* J., and the second by *Keville,* J.

*Richard Wait* for S. Parkman Shaw & another, trustees (*Edward F. Hines, Jr.,* for Thomas Bell Frost, executor, with him).

*Charles M. Furcolo,* Deputy Assistant Attorney General, for the Commissioner of Corporations and Taxation.

WILKINS, J. These cases present constitutional questions arising from the provisions of G. L. c. 65A, § 1, which in certain circumstances impose estate taxes on the transfer of intangible personal property "within the commonwealth" of persons who have died as residents of foreign countries but do not similarly impose such taxes on the transfer of such intangible personal property of persons who have died as residents of other States.[2]

---

[2] Section 1 of G. L. c. 65A, in relevant part (the last paragraph, as appearing in St. 1933, c. 316, § 1), reads as follows: "A tax is hereby imposed upon the transfer of real property or tangible personal property in the commonwealth of every person who at the time of death was a resident of the United States but not a resident of the commonwealth, and upon the transfer of all property, both real and personal, within the commonwealth of every person who at the time of death was not a resident of the United States, the amount of which shall be a sum equal to such proportion of the amount by which the credit allowable under the applicable federal revenue act for estate, inheritance, legacy and succession taxes actually paid to the several states exceeds the amount actually so paid for such taxes, exclusive of estate taxes based upon the difference between such credit and other estate taxes and inheritance, legacy and succession taxes, as the value of the property in the commonwealth bears to the value of the entire estate, subject to estate tax under the applicable federal revenue act."

This provision, which is sometimes called a "sponge" tax, was designed to absorb the Federal estate tax credit which is available against a Federal estate tax for amounts paid to any State, territory or the District of Columbia in respect of inheritance, estate or other State succession taxes. See Int. Rev. Code of 1954, § 2011 (and amendments through 26 U. S. C. § 2011 [1970]), as to estates of deceased residents or citizens of the United States, and Int. Rev. Code of 1954, § 2102 (as amended through 26 U. S. C. § 2102 [1970]), as to taxable estates of deceased nonresidents who are not citizens. If

THE KUHN ESTATE.

The first proceeding involves the Massachusetts intangible assets of Timothy P. Kuhn (Kuhn) who died in November, 1968, a citizen of the United States and "a resident and domiciliary" of Rome, Italy. At the time of his death he left no real or tangible personal property of any value in the Commonwealth. He did own intangible property, valued for Federal estate tax purposes at approximately $513,000, consisting of "(1) a joint interest in certain shares of stock held in a brokerage account with W. E. Hutton & Co., Boston, within the County of Suffolk; (2) stock, bonds and cash held in a brokerage account with Gardner & Preston Moss, Inc., Boston, within the county of Suffolk; and (3) cash on deposit with State Street Bank & Trust Co., Boston, within the County of Suffolk." Kuhn's gross estate for Federal estate tax purposes was approximately $669,000. Under § 2011 of the Int. Rev. Code of 1954 (as amended through 26 U. S. C. § 2011 [1970]), $13,060.42 was the maximum allowable credit against the Federal estate tax for estate, inheritance, legacy or succession taxes actually paid to any State, Territory or the District of Columbia, in respect of the property included in Kuhn's gross estate for Federal estate tax purposes. Except for the payment of $10,022.57 to the Commonwealth as the amount due under G. L. c. 65A, § 1, no other estate, inheritance, legacy or succession taxes have been paid to any State, Territory or the District of Columbia in

the estate tax credit allowable to the estate of a nonresident decedent under the applicable Federal revenue act is not equalled or exceeded by the amount of inheritance taxes paid to the several States (exclusive of any "sponge" tax paid by reason of statutes like G. L. c. 65A, § 1), Massachusetts will take that portion of the unused credit which is represented by the ratio of the value of the property in Massachusetts to the value of the entire estate subject to Federal estate taxes. General Laws c. 65A, § 1, has the characteristics of an estate tax rather than an inheritance tax (see G. L. c. 65, § 1) because under G. L. c. 65A, § 1, the tax relates to the entire estate and does not depend on the relationship of the transferee to the decedent or on the value of the assets transferred to the transferee. Section 5 of G. L. c. 65A describes the tax imposed by G. L. c. 65A as an estate tax.

respect of the property included in Kuhn's gross estate for Federal estate tax purposes.

This petition in equity for abatement of taxes comes to us on a reservation and report by a judge of the Probate Court for a determination, on the pleadings and a statement of agreed facts, whether all or any part of the payment of $10,022.57 made to the Commonwealth should be abated.

Kuhn's executor argues that under the due process clause of the Fourteenth Amendment to the Federal Constitution it is impermissible for the Commonwealth to impose any tax on Kuhn's intangible assets held in Massachusetts brokerage accounts and in a Massachusetts bank. Further, relying on the equal protection clause of the Fourteenth Amendment to the Federal Constitution and certain provisions of the State Constitution,[3] Kuhn's executor contends that it is unconstitutional to impose a tax on the transfer of intangible assets of those nonresidents who are domiciliaries of other countries when no such tax is imposed as to the transfer of intangible assets of deceased residents of other States.

## LADY BATEMAN'S TRUST.

The second proceeding involves the propriety of the taxes levied under G. L. c. 65A, § 1, on the transfer of the assets held by the trustees of an inter vivos trust following the death of the settlor, Marian Lady Bateman. In 1904, the decedent (then Marian G. Knapp and an American citizen), in anticipation of her marriage to Lord Bateman, executed an indenture of trust in Boston. Since its creation, one of the trustees of the trust has

---

[3] Kuhn's executor relies on Part II, c. 1, § 1, art. 4, which provides in part that the General Court may "impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said commonwealth . . . ." He further relies on art. 10 of the Declaration of Rights of the Massachusetts Constitution which has been construed as providing the same protection as that provided by the equal protection clause of the Federal Constitution. See *Opinion of the Justices,* 357 Mass. 827, 830.

been a Massachusetts resident, and the securities representing the corpus of the trust have been kept in Boston. On her marriage, Lady Bateman became a British. subject. She died in 1970, a long-time resident of Monaco and still a British citizen. Her will was admitted to probate in Monaco. Under the terms of the trust, after an annuity for Lord Bateman, the net income was payable to Lady Bateman during her life. She retained a power of appointment as to the distribution of the trust assets on her death.[4]

Under § 2101 of the Int. Rev. Code of 1954 (as amended through 26 U. S. C. § 2101 [1970]), concerning the taxation of the estate of "every decedent nonresident not a citizen of the United States," the transfer of the trust assets at the death of Lady Bateman was subject to Federal estate taxes. On the date of her death the trust corpus was of a value in excess of $4,000,000. The gross Federal estate tax was approximately $743,000, prior to any credit for any Massachusetts inheritance or estate taxes. No other estate, inheritance, legacy, or succession taxes have been paid by the trustees to any State, Territory or the District of Columbia as to property included in Lady Bateman's gross estate. Under § 2102 of the Int. Rev. Code of 1954 (as amended through 26 U. S. C. § 2102 [1970]), the maximum credit allowable was $254,462.37 for the amount of any State death taxes. The trustees paid that amount ($254,462.37) to the Commonwealth and claimed it as a credit against the Federal estate tax (paying only the net amount to the United States). Then, as the Bateman trustees state in their brief, they "learned (to their horror) that the Federal Internal Revenue Service had taken the position that in the situation described in this record no estate tax was payable to Massachusetts by reason of G. L. c. 65A, § 1 . . . and consequently that no credit against the gross federal estate tax was available under IRC § 2102."

---

[4] She made various appointments by instruments executed during her life. She did not exercise the power in her will.

In March, 1972, the trustees filed a petition for instructions in the Probate Court. They alleged that it was "a matter of indifference to the petitioners whether said amount [$254,462.37] was payable by them . . . to the Commonwealth or to the . . . United States, but it is essential that it be authoritively [*sic*] determined whether or not the amount paid to the Commonwealth was owed by them to the Commonwealth." In addition to instructions, they requested that the payment to Massachusetts be abated to the extent that the tax was assessed without authority of law. The United States was named as a respondent but declined to waive its sovereign immunity, and its plea to the jurisdiction was sustained.[5]

The proceeding brought by Lady Bateman's trustees comes to us on a reservation and report by the Probate Court for a determination on the petition (as amended), the answer of the Commissioner of Corporations and Taxation (Commissioner), a statement of agreed facts, the plea of the United States of America and the interlocutory decree sustaining that plea. The Bateman trustees argue that the discrimination in G. L. c. 65A, § 1, between those nonresidents who live in other countries and those nonresidents who live in other States is unlawful as a denial of equal protection of the laws guaranteed under the Fourteenth Amendment to the Consti-

[5] Attempts by counsel for the taxpayers to persuade the Federal government to join in these proceedings were fruitless, even though the real parties in interest are the Commonwealth and the United States. The taxpayers have, therefore, been obliged to argue here on behalf of a position which, because they paid the State estate taxes, is contrary to the view which they must have initially had on the issues now before this court. In the tradition of the bar they have responded with an able presentation of the position which the United States would have advanced if it had been willing to participate in these proceedings.

The decision of the Federal government not to participate may have been wise in one respect in that it is doubtful that the Federal taxing authorities could have presented their position more adequately than it has been advanced by the taxpayers. Clearly their position could not have been presented in any other way at less direct cost to the Federal government. In the absence of the United States as a party the decision of this court may well not be conclusive with respect to the deductibility of amounts shown on the Federal estate returns of the taxpayers as paid to the Commonwealth as estate taxes. See *Smayda* v. *United States*, 352 F. 2d 251, 253 (9th Cir.).

tution of the United States and under art. 10 of the Massachusetts Declaration of Rights.[6]

DUE PROCESS OF LAW.

The executor of the Kuhn estate argues that the imposition of a tax on the transfer of its Massachusetts intangibles would violate the due process provisions of the Fourteenth Amendment to the Constitution of the United States because those intangibles were not within the taxing jurisdiction of the Commonwealth.[7]  Our task is to determine whether the tax imposed by G. L. c. 65A, § 1, on the Massachusetts intangibles in the Kuhn estate reaches beyond constitutionally permissible limits.

Although the pattern of treatment by the Supreme Court of the United States of the right of a State to impose an inheritance tax with respect to *tangible* personal

---

[6] There is a reasonable argument that objections to the treatment of the taxpayers by the Massachusetts estate tax do not rise to the level of the constitutional concerns expressed.  On the record before us the taxpayers are not obliged to pay one additional dollar of taxes as the result of the application of G. L. c. 65A, § 1, to them.  The only consequence of G. L. c. 65A, § 1, is that a portion of what the Federal government would otherwise have collected comes to the Commonwealth.  The United States may be "aggrieved," but the taxpayers seemingly are not.  And it is not clear that the United States cares, at least with respect to its uneven collection of taxes from estates.  We would view with disfavor an assertion of jurisdiction in violation of "due process" considerations, even when the total of the taxes to be paid with respect to assets transferring on death is unaffected.  However, as to "equal protection" considerations, we note that differing but acceptable treatment of the Federal estate tax credit by various States has resulted in disparate estate tax payments to the Federal government in situations which have differed only because of the State or country of the decedent's residence and the place in which his property was situated at his death.  Congress has not undertaken to eliminate this "inequity."  If seeming inequities between States in this respect are acceptable to the Federal government, it is unclear why differences in the treatment of the estate tax credit which produce no adverse impact on taxpayers should be unacceptable to the United States simply because they occur within a single State. We have, however, treated the taxpayers as if they have a valid basis for raising the constitutional issues presented to us.

[7] A similar argument is not advanced by the trustees of the Bateman trust because they rightly recognize that Massachusetts may properly impose an inheritance tax with respect to the transfer of assets held in Massachusetts by a trust of which one trustee had always been a Massachusetts citizen and as to which the settlor had a life interest in the net income and retained a power of appointment. See *Curry* v. *McCanless*, 307 U. S. 357.

Frost *v.* Commissioner of Corporations & Taxation.

property is firmly established to the effect that such a tax may be imposed only by the State where the tangible personal property is situated,[8] the treatment by the Supreme Court of inheritance taxes as to *intangibles* has not been as consistent. Initially, power of a State over the intangible property justified an inheritance tax upon its transfer. See *Blackstone* v. *Miller*, 188 U. S. 189 (New York inheritance tax on a New York bank deposit owned by an Illinois resident held to be proper because New York had power over the person of the debtor); *Wheeler* v. *Sohmer*, 233 U. S. 434 (New York tax on promissory notes made by nonresidents of New York, owned by a nonresident but situated in a New York safe deposit box, held to be proper because the evidences of indebtedness were in New York).[9]

In 1930, the United States Supreme Court changed its earlier view concerning the right of a State to impose death taxes on intangibles owned by a nonresident decedent. In *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204, the court overruled *Blackstone* v. *Miller*, 188 U. S. 189, and held that Minnesota could not constitutionally impose an inheritance tax on bonds and certificates of indebtedness issued by the State of Minnesota (and certain of its political subdivisions) which were owned by a New York decedent and kept in New York. The court concluded that the possibility of dual taxation should be forbidden for intangibles just as it had been for tangible personal property. *Id.* at 212. Other decisions resting on the same reasoning followed rather promptly after the *Farmers Loan & Trust Co.* case. See *Baldwin* v. *Missouri*, 281 U. S. 586 (bonds, notes and cash on

[8] See *Frick* v. *Pennsylvania*, 268 U. S. 473, 489, as to tangible personal property within the country and *Treichler* v. *Wisconsin*, 338 U. S. 251, 256–257, as seemingly applicable to tangible personal property outside the country.

[9] The right of the decedent's State of domicil to impose an inheritance tax with respect to all of his intangible personal property has long been recognized, even if that intangible property attracted an inheritance tax in another State. *Blodgett* v. *Silberman*, 277 U. S. 1, 9–10. *Curry* v. *McCanless*, *supra*, at 366.

deposit in bank accounts of an Illinois decedent which were present in Missouri not properly taxable by Missouri) ; *Beidler* v. *South Carolina Tax Commn.* 282 U. S. 1 (debts owed by a South Carolina corporation to an Illinois decedent not properly taxable by South Carolina) ; *First Natl. Bank* v. *Maine,* 284 U. S. 312, 330–331 (stock owned by a Massachusetts decedent in a Maine corporation, having most of its property there, not taxable in Maine and said to be taxable only in the State of the decedent's domicil). This line of cases recognized, however, that a State might have the right to tax intangibles of nonresidents which had acquired a business situs in the State because of some connection with a local business. See *Farmers Loan & Trust Co.* v. *Minnesota,* 280 U. S. at 213; *First Natl. Bank* v. *Maine,* 284 U. S. at 331. The Supreme Court of the United States soon so held as to ad valorem personal property taxes on intangible personal property which had acquired a business situs. *Wheeling Steel Corp.* v. *Fox,* 298 U. S. 193.

From the time of the *Farmers Loan & Trust Co.* case and its immediate progeny, the trend of the treatment by the Supreme Court of the United States of inheritance taxes on the transfer of intangible personal property has been away from the concept of a single State of taxation. The Kuhn executor argues that the *Farmers Loan & Trust Co.* case has never been expressly overruled, nor have *Baldwin* v. *Missouri,* 281 U. S. 586, and *Beidler* v. *South Carolina Tax Commn.* 282 U. S. 1. In this contention he is correct. However, we believe that the Supreme Court's more recent treatment of the inheritance taxation of intangibles of nonresidents shows that the principle of the *Farmers Loan & Trust Co.* case would not now be followed by it in the circumstances here involved.

In *Curry* v. *McCanless,* 307 U. S. 357, Alabama was permitted to tax the transfer of trust assets held in Alabama by an Alabama trustee where the deceased settlor, a resident of Tennessee, retained a testamentary power of appointment and a right during her life to the

net income of the trust.[10]   The court said in part (307 U. S. at 367) : "[W]hen the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains . . .."

In *State Tax Commn.* v. *Aldrich,* 316 U. S. 174, the Supreme Court of the United States overruled *First Natl. Bank* v. *Maine,* 284 U. S. 312, and following what it regarded as the "guiding principles" of *Curry* v. *McCanless, supra,* held that Utah could constitutionally impose an inheritance tax with respect to the transfer of shares of stock in a Utah corporation owned by a New York decedent and kept in New York.   The Kuhn executor correctly distinguishes the facts of the *Aldrich* case from the facts of the case before us by pointing out that the *Aldrich* case involved shares in a Utah corporation, "an intangible interest in an entity which drew its very legal existence from the laws of the state whose power to tax was at issue."   He points out further that the Massachusetts intangibles in the Kuhn estate have no business situs in Massachusetts, are not held in a Massachusetts trust and are not (so far as appears in the record) securities issued by any Massachusetts corporation.[11]

---

[10] In such a situation the State of residence of the decedent also would have been entitled to impose an inheritance tax on the transfer of the intangible assets held in the out of State trust.   See *Curry* v. *McCanless,* 307 U. S. 357, 372–374; *Graves* v. *Elliott,* 307 U. S. 383, 386–387; *Graves* v. *Schmidlapp,* 315 U. S. 657.

[11] The Kuhn executor correctly points out as well that the issue before us is not whether the Massachusetts intangibles are constitutionally free from taxation by any other State, and thus somehow made properly subject to taxation in the Commonwealth.   The fact that no other State may impose any estate or inheritance tax on the transfer of these intangibles (if it is a fact) does not by itself justify a Massachusetts tax.   The Massachusetts tax can be justified only if the intangibles are constitutionally within the jurisdiction of this State for inheritance tax purposes.

There is no question that a Federal estate tax may constitutionally be imposed on the value of the intangible personal property in Massachusetts held by the Kuhn executor.   See *Burnet* v. *Brooks,* 288 U. S. 378 (securities and cash of a nonresident alien held in this country properly subject to Federal estate tax).   In the view we take of this

The *Aldrich* opinion, however, sets forth in broad language the proposition, which we believe now to be governing, that a State may constitutionally impose an inheritance tax in connection with the transfer of intangible personal property of a deceased nonresident if that State "has extended benefits or protection" with respect to property or "can demonstrate 'the practical fact of its power' or sovereignty" as respects the property. Pp. 181–182.

The intangible Massachusetts assets of the Kuhn estate were extended benefits and protection by the Commonwealth. The cash on deposit in a Massachusetts commercial bank was protected by State supervision and regulation of that bank (G. L. c. 167) and by the laws of this Commonwealth concerning the obligations of the bank to its depositors, including the decedent. See, e.g., Uniform Commercial Code, G. L. c. 106, art. 3 (concerning commercial paper) and art. 4 (concerning bank deposits and collections). The securities and cash in brokerage accounts in Massachusetts were similarly held in circumstances where the law of the Commonwealth was protecting the interests of the decedent. See, e.g., Uniform Commercial Code, G. L. c. 106, art. 8 (concerning investment securities).

The role of a broker holding cash and securities for a customer is not sufficiently different from that of a trustee of a trust so as to justify a constitutional distinction for the purposes of determining jurisdiction to tax. As we have observed, intangible assets of a trust are subject to State inheritance taxes in the State in which the trust is situated where a decedent settlor has a life interest in the income and a power of appointment concerning the distribution of trust assets at his or her death. See *Curry* v. *McCanless*, 307 U. S. 357. Indeed a nonresident might have no more, and perhaps less,

case we do not have to decide whether the Commonwealth's jurisdiction to tax might be greater when dealing with intangibles of deceased expatriates than it is in dealing with intangibles of deceased domiciliaries of other States.

benefit or protection from the Commonwealth as a beneficiary of a trust (particularly one with broad exculpatory language) than he has in the fiduciary relationship which may exist when one is a customer of a brokerage account.[12]   See *Berenson* v. *Nirenstein*, 326 Mass. 285, 288–289.

In *Greenough* v. *Tax Assessors of Newport*, 331 U. S. 486, the Supreme Court of the United States upheld a Rhode Island ad valorem tax on the value of intangibles held in a trust where the only contact of the State with the trust was the fact that one of the two trustees resided in Rhode Island.   In considering the matter (*Id.* at 495–496) the court concluded that the cotrustee had the benefit and protection of the availability of the law of Rhode Island and, minimal as that benefit and protection were, they were sufficient to sustain the Rhode Island tax against a charge that it violated the due process clause of the Fourteenth Amendment.[13]

Clearly the benefit and protection extended by the laws of the Commonwealth to the assets of the Kuhn estate were far greater than the benefit and protection found sufficient in the *Greenough* case.   Moreover, the Commonwealth had, paraphrasing the language of the *Aldrich* case (at pp. 181–182), the practical fact of its power and sovereignty as respects the Kuhn assets, securities within the Commonwealth and the debts of creditors doing business in the Commonwealth.   We hold that there is no due process bar to the imposition of the estate tax provided

---

[12] It does not appear whether the securities held in the brokerage accounts were held in a nominee name, whether dividends and interest were initially received and then distributed by the broker, whether appraisals were furnished and accounts rendered, or whether the brokers performed investment advisory services for the decedent. Even if none of these circumstances existed, each of which has a parallel in activities of a trustee, we do not believe that the Commonwealth lacked the right to tax the transfer of the Kuhn intangibles upon Kuhn's death.

[13] The Rhode Island tax was imposed on only one-half of the value of the intangible trust assets because the Rhode Island trustee was only one of two trustees.   Similarly, the Massachusetts "sponge" tax absorbs only that portion of the unused Federal estate tax credit which the value of Massachusetts assets bears to the value of the entire Federal estate.

by G. L. c. 65A, § 1, with respect to the Massachusetts assets in the Kuhn estate.

EQUAL PROTECTION OF THE LAWS.

In each case the taxpayer contends that by differentiating between those nonresidents domiciled in other States and those nonresidents domiciled outside of the United States, G. L. c. 65A, § 1, runs afoul of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and comparable provisions in the Constitution of the Commonwealth. They assert that "the place of residence of the . . . [decedent] is an irrelevant fact which does not justify disparate treatment for purposes of taxation of the property held here in Massachusetts." [14]

The constitutional standards to be applied in determining whether G. L. c. 65A, § 1, denies equal protection of the laws in the circumstances of these cases are well

---

[14] There is no authority directly on point on this issue. If the position taken by the Internal Revenue Service that G. L. c. 65A, § 1, denies equal protection of the laws with respect to the taxation of assets of deceased expatriates is not one of relatively recent development, the absence of judicial decisions on this issue is hard to explain. The circumstances which give rise to the present dispute between the Federal and State taxing authorities must have occurred previously many times. The language of what is now the third paragraph of G. L. c. 65A, § 1, has been in effect in its present form for over forty years. See St. 1933, c. 316, §§ 1 and 2. Section 2 of St. 1933, c. 316, provides that it is effective as of December 1, 1932. Other States have for years made inheritance tax distinctions between the assets of deceased expatriates and the assets of deceased residents of other States. The distinction in the tax treatment of the intangibles of deceased residents of other States and in the tax treatment of the intangibles of deceased residents of other countries has sometimes been explicitly stated in the language of the statute. See, e.g., Fla. Sts. §§ 198.04 and 198.03 (taxing the intangible personal property "physically present" within the State if owned by a deceased expatriate but taxing only intangible personal property having a "business situs" in Florida if owned by a deceased resident of another State); Wash. Rev. Code, § 83.12.030 (denying exemption as to intangibles of nonresidents who were not residents of the United States). Such a distinction may result indirectly by means of a statute exempting from local inheritance taxes the intangibles of a decedent of another State (but not another country) if that other State provides a reciprocal exemption when the circumstances are reversed. See, e.g., Iowa Code Anno. § 450.91; Mont. Rev. Codes, § 91–4413. Of course, such a distinction may be expressed in a State "sponge" tax, as it has been in Massachusetts. See, e.g., Ill. Anno. Sts. c. 120, § 403a.

established and not here in dispute. "A classification by a Legislature of property and persons for the purpose of taxation is not violative of . . . [the equal protection] clause of the Fourteenth Amendment so long as any basis of fact can be reasonably conceived showing that the distinction upon which it rests has a fair and rational relation to the object sought to be accomplished by the enactment, and so long as, the classification being valid, the State deals equally with all the members of the same class." *Old Colony R. R.* v. *Assessors of Boston,* 309 Mass. 439, 446. See *Allied Stores of Ohio, Inc.* v. *Bowers,* 358 U. S. 522, 527–528, and cases cited. The taxpayers thus have a heavy burden of proving that the distinction between nonresident decedents domiciled abroad and those domiciled in the United States cannot be supported on any conceivable basis. See *McGowan* v. *Maryland,* 366 U. S. 420, 425–426. There is a presumption of constitutionality which must prevail in the absence of some factual foundation for rejecting the classification as arbitrary or irrational. *Pinnick* v. *Cleary,* 360 Mass. 1, 28, and cases cited (majority opinion), 32–33, and cases cited (concurring opinion). If there is a conceivable basis for the statutory classification, it is not necessary for us to indorse it. *Roberts* v. *State Tax Commn.* 360 Mass. 724, 729.

The Commissioner cites *Maxwell* v. *Bugbee,* 250 U. S. 525, as authority for the Commonwealth's discrimination between residents of foreign countries and residents of sister States. In the *Maxwell* case the Supreme Court of the United States upheld a New Jersey inheritance tax imposed with respect to the transfer of certain New Jersey property of a nonresident decedent. The New Jersey tax, which was graduated, was assessed only on the transfer of certain property within New Jersey, but its amount was determined by taking that portion of "the entire tax which the said estate would have been subject to . . . if such nonresident decedent had been a resident of . . . [New Jersey]" which the taxable property within New Jersey bore to the entire estate, wherever

situated. Thus, because of the graduated nature of the tax, it was clear that different inheritance tax obligations would be incurred with respect to two estates, each having the same assets subject to tax in New Jersey if one of them were the estate of a resident and the other the estate of a nonresident who had assets outside of New Jersey which would have been subject to taxation if the decedent had been a New Jersey resident.

Various constitutional objections were raised to this method of determining the inheritance taxes payable with respect to taxable transfers of New Jersey assets of nonresident decedents, including a claim that the tax bore unequally and denied nonresidents the equal protection of the laws.

The court set forth the applicable equal protection principles, stating that "[t]he question of equal protection must be decided as between resident and non-resident decedents as classes, rather than by the incidence of the tax upon the particular estates whose representatives are here complaining. Absolute equality is impracticable in taxation, and is not required by the equal protection clause. And inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law." *Id.* at 543. We accept this statement of principle as an appropriate one for application in the cases before us.

In the *Maxwell* case the court held that the classification was not so wholly arbitrary and unreasonable as to be beyond the legitimate authority of the State because "there are substantial differences which within the rules settled by this court permit the classification which has been accomplished by this statute." *Id.* at 543. The court justified the difference in the two categories on the ground that they stood in a different relation to the State. The deceased resident's property was said to be usually within the ready control of the State, and "easily open to inspection and discovery for taxation purposes, by means quite different from those afforded in cases of

local holdings of non-resident[s]." The resident's intangible property and usually most of his tangible property "pay tribute to the State" when transferred on death, whereas only certain specified property of a nonresident within the jurisdiction is taxed on his death. *Id.* at 542. If any lesson may be learned from the treatment of equal protection principles in the *Maxwell* case, it is that, at least at that time, not much distinction was required to sustain different State inheritance tax classifications.

The taxpayers cite decisions of the Supreme Court of the United States which have struck down on equal protection grounds State tax statutes which, as the court concluded, accorded different and less favorable treatment to foreign corporations doing business in the State from the treatment accorded to domestic corporations where there was not the slightest difference in the State's relation to the decisive transaction. *Wheeling Steel Corp.* v. *Glander*, 337 U. S. 562, 571–572. *WHYY, Inc.* v. *Glassboro*, 393 U. S. 117, 120. The taxpayers also cite *Hillsborough* v. *Cromwell*, 326 U. S. 620, 623, concerning disproportionate local tax assessments on intangible personal property.

The taxpayers further rely on the decision of the Supreme Court of Kentucky in *Burge* v. *Marcum*, 394 S. W. 2d 908 (Ky.), a case which has some similarity to the circumstances of the cases before us but significantly does not deal with a State taxing statute designed to absorb all or a portion of the Federal tax credit. In the *Burge* case, a State tax was assessed under a statute which provided that all shares of stock in Kentucky corporations "belonging to a person whose domicile is in a country foreign to the United States or its possessions, shall, on the death of the owner, be subject to a tax of five percent of their actual value upon their transfer, payment, or delivery to . . . the estate of the decedent." *Id.* at 909. No similar tax was imposed on shares of stock in Kentucky corporations owned at death by persons domiciled in States other than Kentucky. Burge, the

decedent, was a domiciliary of Guatemala at his death. The court concluded that for the purpose of assessing this tax persons domiciled in foreign countries stood in no different relation to Kentucky from that of persons living in other States of the Union. The only argument advanced in justification of the classification made by the statute apparently was that "foreign domiciled citizens are not subject to taxes on their capital stock in the country of their domicile, but citizens of other states might be subject to such taxes in their home state." *Id.* at 910. The Kentucky court found no basis for the assumption that foreign countries do not consider capital stock owned by deceased residents in levying taxes and therefore concluded that the classification could not be justified as a method of equalizing the tax burden or avoiding double taxation.

The basic question for decision on the equal protection of the laws question is whether for estate tax purposes the relation of Massachusetts to nonresident decedents differs in some rational way between those who resided in the country and those who did not so reside. Although the burden is on the taxpayers to establish that the classification is irrational, as a practical matter in circumstances such as these, some logical justification for the classification must appear which might have prompted the Legislature to act as it did.[15]

There are differences between the Commonwealth's relation to deceased residents of foreign countries and its relation to deceased residents of other States which the Legislature could have regarded as sufficient for constitutional purposes to support the disparate treatment set forth in G. L. c. 65A, § 1. In analyzing the difference between the Commonwealth's relation to deceased residents of other States and its relation to deceased residents of other countries, it must be remembered that for the

---

[15] In this respect the Commissioner has argued that "the Massachusetts Legislature could have rationally presumed that residents of the United States, unlike non-residents, would be subject to an estate excise by some one of the states – if not by Massachusetts, then by a sister state."

purposes of these cases we are dealing only with a tax designed to absorb all or a portion of the Federal estate tax credit.

The likelihood of taxation of intangibles by the "sponge" taxes of two States is far less as to the intangibles of a decedent of another country than it is as to the intangibles of a deceased resident of another State. Because most States have a "sponge" tax applicable to the value of all intangibles owned by its deceased residents,[16] a double "sponge" tax problem is possible if a decedent resident in another State had intangibles here,[17] whereas a double "sponge" tax problem is far less likely to arise if the decedent was an expatriate. As to a decedent resident abroad, the threat of a double "sponge" tax is greatly reduced because there is no domiciliary State to impose a "sponge" tax, and in no circumstances can another country possibly compete for a share of the unused Federal estate tax credit, as another State can.

Moreover, the threat of double taxation on the assets of a deceased expatriate may be greatly reduced or even eliminated by a tax convention between the United States and his country of domicil [18] and by the Federal estate tax credit for death or estate taxes paid to a foreign country with respect to assets includible in the decedent's gross estate for Federal estate tax purposes. (26 U. S. C.

[16] A survey of the estate or "sponge" taxes in effect in the various States indicates that more than seventy-five per cent of the States have a "sponge" tax which includes the intangibles of deceased residents among the property subject to their "sponge" taxes.

[17] A double "sponge" tax might be imposed if the Federal estate tax credit were not used up by regular State inheritance taxes and if each of two or more States asserted that the same assets were locally situated for the purpose of determining, on a formula basis or otherwise, the proportion of the Federal estate tax credit payable to it. See the discussion of State statutes designed to sponge up the credit for State death taxes under § 2011 of the Int. Rev. Code in Casner, Estate Planning, 1972 Supp. to Vol. II, pp. 1735–1737. See also C.C.H. Additional Estate Tax for Federal Credit, 4 State Inheritance Estate and Gift Tax Reporter, pars. 2500–2590, esp. par. 2560.

[18] Tax conventions have been entered into by the United States with more than a dozen countries, generally those countries which present vis-à-vis the United States the greatest potential of double international estate taxation. These countries include Italy and the United Kingdom, but not Monaco. 3 Estate Planning, Federal Estate Taxes (Prentice-Hall) pars. 128,001–128,916.

§ 2014 [1970].)   No similar protection against double taxation exists as to the "sponge" taxes of two or more States.

The Commonwealth may have refrained from any attempt to collect a "sponge" tax on the transfer of intangibles of deceased residents of other States in the hope that other States would reciprocate and refrain from similarly taxing intangibles of Massachusetts decedents.   In this way each domiciliary taxing State would absorb under its estate tax that portion of the Federal estate tax credit attributable to the decedent's intangibles, and there would be no duplication of taxation of intangibles.[19]   Similar "comity" with foreign countries has no meaning when dealing with the Federal "sponge" tax.

PART II, c. 1, § 1, ART. 4, OF THE MASSACHUSETTS
CONSTITUTION.

There remains only a consideration of the requirement of Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth that excises be reasonable.   Discrimination in the form of unequal excises, founded on an immaterial fact, is improper. *Opinion of the Justices,* 266 Mass. 590, 595.   We believe, however, for the reasons already expressed in this opinion that there are material differences which reasonably justify differing treatment of the two classes of nonresidents.

The pattern of inheritance (G. L. c. 65) and estate (G. L. c. 65A) taxation in the Commonwealth shows as well that the classifications made by the third paragraph of G. L. c. 65A, § 1, are within constitutional bounds.

---

[19] In the treatment of the transfer of intangibles of non-residents under State *inheritance* taxes, the possibility of double taxation has been greatly reduced because such a "mutual understanding" has been largely achieved.   A State may choose to impose no inheritance tax on the intangibles of nonresidents, even if the intangibles are within the State.   See, e.g., G. L. c. 65, § 1.   Another State may provide for an inheritance tax on intangibles of nonresidents but does not collect it in the circumstances because the State has adopted the substance of the Uniform Reciprocal Transfer Tax Act (or some other form of reciprocity).   See Marsh, Multiple Death Taxation in the United States, 8 U. C. L. A. L. Rev. 69, 71–72.

The State inheritance tax applies to "[a]ll property within the jurisdiction of the commonwealth, corporeal or incorporeal, and any interest therein, belonging to inhabitants of the commonwealth" and to all real estate and tangible personal property within the Commonwealth belonging to persons who are not inhabitants of the Commonwealth. G. L. c. 65, § 1. Thus, the value of the intangibles of an inhabitant of the Commonwealth is subject to inheritance tax. The intangibles of nonresidents of the Commonwealth (even if subject to the jurisdiction of the Commonwealth so that an excise could constitutionally be imposed) are free from Massachusetts *inheritance* taxes.

Under the estate tax the intangibles of a deceased resident of the Commonwealth (see G. L. c. 65A, § 1, pars. 1 and 2) and the intangibles of a deceased expatriate (see G. L. c. 65A, § 1, par. 3) may be subject to the Massachusetts "sponge" tax (and the intangibles of a deceased resident of another State will not be). However, the Massachusetts "sponge" tax can be imposed only if the value of the decedent's gross estate for Federal estate tax purposes exceeds the $60,000 exemption (Int. Rev. Code of 1954 [as amended through 26 U. S. C. § 2052 (1970)]) and if the total of all State inheritance taxes paid by the estate is not as great as the available Federal estate tax credit.

Recognizing the wide discretion given to the Legislature in establishing classifications for the purpose of imposing excises, we believe the classifications made by G. L. c. 65A, § 1 (considered in conjunction with the classifications made by G. L. c. 65) are reasonable and thus reasonable within the requirements of Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. See *Minot* v. *Winthrop,* 162 Mass. 113, 123–124.[20]

---

[20] Because we are dealing with an excise, and not a property tax (see *Lustwerk* v. *Lytron, Inc.* 344 Mass. 647, 651), the taxpayers correctly concede that the requirement of Part II, c. 1, § 1, art. 4, of the Constitution that a property tax be proportional does not apply.

### CONCLUSION.

In the proceeding brought by the executor of the Kuhn estate for abatement of taxes, a decree shall be entered in the Probate Court that no abatement in the tax in the amount of $10,022.57 assessed and paid pursuant to G. L. c. 65A, § 1, is warranted and that the tax of $10,022.57 was properly assessed and paid. In the proceeding brought by the trustees of the Bateman trust for instructions, a decree shall be entered in the Probate Court declaring that pursuant to G. L. c. 65A, § 1, the Bateman trustees were properly required to pay to the Commonwealth the sum of $254,462.37 as an estate tax and that no abatement of the assessment or a refund of any portion of the payment of $254,462.37 should be made. If the appropriate taxpayer shall so request, each final decree shall provide that it may be reopened in the event that the Supreme Court of the United States determines that the estate tax payment made is not deductible for Federal estate tax purposes on the ground that G. L. c. 65A, § 1, imposed an estate tax in violation of the provisions of the Constitution of the United States.

*So ordered.*